**CHAMELEON DENTAL PRODUCTS, INC., Plaintiff–Appellant,**

*v.*

**James L. JACKSON, Albert R. Faunce and Frank R. Faunce d/b/a Jaff Investment Company, Defendants–Appellees.**

No. 89–2962.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1990.

Decided Feb. 22, 1991.

Douglas J. Heckler, Barnes & Thornburg, Jack Schuman, B. Keith Shake, Henderson, Daily, Withrow & Devoe, Indianapolis, Ind., David W. Hauber, Kansas City, Kan., for plaintiff-appellant.

Guy E. Matthews, Houston, Tex., for defendants-appellees.

Before WOOD, Jr., FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Jaff Investment Company* holds a majority interest in United States patents covering laminate dental veneers and their manufacturing methods. Chameleon Dental Products, Inc., is a company that makes porcelain laminate veneers. Chameleon sold the materials and trained dental laboratories to apply the veneers.

In September 1984, Jaff brought a federal suit against Myron's Dental Laboratories (owner of Chameleon) for patent infringement. This lawsuit was settled on November 3, 1984. Myron's Dental Laboratories (on behalf of Chameleon) and Jaff agreed to the entry of a consent decree which established the validity of the Jaff patents and Myron's infringement of those patents. As a part of the settlement provisions, the parties executed three licensing agreements between December 1984, and April 1985.

The first agreement, the Training Program Agreement, granted Chameleon a license to train Jaff's licensees in exchange for a specific payment for each laboratory location trained. Jaff also agreed to pay Chameleon certain royalty payments whenever Jaff granted a license under one of its patents. The second agreement, the Chameleon License Agreement, granted Chameleon a license for the use of the Jaff patents. Two of Chameleon's facilities would operate royalty-free with respect to orders from a dentist or a licensed laboratory. A third agreement, the Laboratory License Agreement, licensed Chameleon's new California lab and required it to pay royalties to Jaff.

Each of the three agreements contained an arbitration provision. The pertinent part for our purposes states:

> If any matter involving claims and/or disputes or other question arising out of, or relating to this Agreement or to a breach hereof or default hereunder can not be settled by mutual agreement ... such matter may be submitted to arbitration in accordance with the practice and procedure of the American Arbitration Association then in force, and this Agreement so to arbitrate shall be specifically, enforceable.

In mid–1985, Jaff claimed that Chameleon was not complying with the terms of the Training Program Agreement. Jaff asserted that Chameleon was training unlicensed laboratories in violation of the agreement, thus causing Chameleon lost royalties. Jaff also alleged that Chameleon had fallen behind in its submission of reports and royalties. Jaff also alleged that Chameleon failed to establish FDA approval of all materials, was delinquent in forwarding to Jaff certifications indicating that certain labs had successfully completed their training, and failed to provide, and keep Jaff informed of, proper training. Based on these claims Jaff unilaterally claimed the Training Program Agreement to be terminated on August 7, 1985.

A little over five months later on January 24, 1986, Chameleon asserted wrongful termination of the Training Program Agreement and demanded arbitration.

* Jaff Investment Company was originally a partnership established by James L. Jackson, Albert R. Faunce, and Frank R. Faunce. Subsequent to the underlying action Jaff became an Indiana corporation.

Jaff responded with a counterclaim. In addition, Jaff also claimed termination of the Chameleon License Agreement on February 26, 1986, asserting that Chameleon assisted others in infringing on Jaff's patents. Shortly thereafter, Jaff asserted unilateral termination of the Laboratory License Agreement, again alleging that Chameleon assisted others in patent infringement and failed adequately to explain royalty calculations.

The entire matter was submitted to an arbitration panel of the American Arbitration Association on July 28–30, 1986. On September 29, 1986, the arbitration panel declared the three disputed licensing agreements to be terminated, awarded damages to Chameleon of $73,056 for wrongfully withheld royalties, and denied Jaff any damages.

Chameleon returned to federal court on December 31, 1986, filing a motion to "Confirm in Part and Vacate in Part the Arbitration Award" in which they alleged that the arbitrators exceeded the scope of their powers in terminating all three agreements. The district court rejected Chameleon's request and confirmed the entire arbitration award.

■ The chances for a successful appeal of an arbitration award are not particularly good. As the district court correctly noted, judicial review of arbitration awards is extremely limited. When asked to set aside an arbitration award, our review is restricted to determining whether the arbitrator actually interpreted the contract. *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir.1987). If so, then their interpretation governs. *Id.* "[O]nce the court is satisfied that [the arbitrators] were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act." *Id.* We have declined invitations to change the arbitrator's interpretation of a contract even if the arbitrator clearly misinterprets it. *E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Ass'n*, 790 F.2d 611, 614 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). On the other hand, if we find that the "arbitrator unmistakably went beyond the terms of the contract to reach the result set forth in his opinion," we will set aside and vacate an arbitration award. *Roadmaster Corp. v. Production and Maintenance Employees' Local 504*, 851 F.2d 886 (7th Cir.1988). Arbitrators do not sit to dispense their own brand of industrial justice. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Chameleon acknowledges the substantial restrictions it faces in contesting the arbitration award but claims that the arbitrators in this case went beyond the terms of the Training Program Agreement when they declared its termination. The Chameleon License Agreement and the Laboratory License Agreement—but not the Training Program Agreement—contained specific provisions for early termination. Chameleon asserts that because the Training Program Agreement had no termination provision the arbitrators were powerless to declare it terminated.

Moreover, each of the three agreements also contained a "life of the patent" provision as the "term" for which the agreement was to remain in effect. Chameleon argues that the specific "life of the patent" term in the Training Program Agreement prohibited its termination prior to the expiration of relevant patents.

Once the arbitrators found violations of the agreements (which they obviously did), they were required to formulate an appropriate remedy. The remedy they decided upon, as we have noted, was to financially compensate Chameleon through a damage award of $73,056 and to terminate all three licensing agreements.

■ There were, in fact, no explicit provisions in the Training Program Agreement authorizing early termination or any other remedies for a breach. However, where such contractual voids exist, arbitrators are given wide latitude in fashioning an appropriate remedy. *Id.; Mogge v. District 8, Int'l Ass'n of Machinists*, 454 F.2d 510, 514 (7th Cir.1971). That an early termination for a breach of the agreement

was not specifically addressed by the drafters is an insufficient basis to determine that such a termination could never constitute a proper remedy. Such a proposition would be inconsistent with the rationale of *Mogge,* and could cause the continuation of contracts between antagonistic parties to the detriment of each side. We do not believe that arbitrators should be forced to provide such an illogical and inappropriate result merely because of the absence of an explicit early termination provision. This situation demonstrates the need for arbitrators to be given flexibility in fashioning appropriate remedies not inconsistent with the terms of the contract or agreement being interpreted.

In this case, the fact that the term of the agreement was for the life of the relevant patents cannot be fairly read to preclude or prohibit early termination for a breach. More importantly, however, the exercise in forming such a decision about early termination is exactly the type of contractual interpretation which arbitrators are charged with carrying out—and courts are prohibited from second-guessing. The decision by the arbitrators to terminate the Training Program Agreement, as well as the other two agreements, was within the latitude given them for fashioning an appropriate remedy.

In seeking to vacate the arbitration award Chameleon also urges us to adopt the so-called "manifest disregard of the law" exception to the statutory review provisions of the Arbitration Act, 9 U.S.C. § 1, *et seq.* However, we have consistently held that the exclusive grounds for vacating or modifying a commercial arbitration award are found in §§ 10 and 11 of the Arbitration Act. *See Moseley, Hallgarten, Estabrook & Weeden v. Ellis,* 849 F.2d 264, 267 (7th Cir.1988). We have not adopted exceptions to the exclusivity of §§ 10 and 11 and see no reason to do so in this case.

Chameleon's dispute with Jaff as expressed in this lawsuit is inextricably bound up with an interpretation of the Training Program Agreement and its reasonable accommodation of early termination for a breach. The parties anticipated that any disputes regarding their agreements would be resolved by arbitration. As they had foreseen, when disputes arose an interpretation of the agreement was made by the arbitrators—who reached a remedy consistent with their duty of contractual interpretation. We may not re-exercise such an interpretation. As the district court pointed out, arbitration is not meant to be an added preliminary step to judicial resolution of commercial disputes.

The decision of the district court is AF-FIRMED.