**ENGIS CORPORATION, Petitioner,**

v.

**ENGIS LTD., Respondent.**

**ENGIS LTD., Counter–Petitioner,**

v.

**ENGIS CORPORATION, Counter–Respondent.**

No. 91 C 6567.

United States District Court,
N.D. Illinois, E.D.

Sept. 28, 1992.

Robert Edward Wagner, Alan L. Barry, Wallenstein, Wagner & Hattis, Ltd., Chicago, Ill., for petitioner.

Michael K. Murtaugh, John Christopher Filosa, Michael L. Morkin, Baker & McKenzie, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In 1972, Engis Corporation ("Corp") and Engis Ltd. ("Ltd.") entered into a licensing agreement (the "1972 Agreement"). Pursuant to the 1972 Agreement, Corp. licensed to Ltd. its intellectual property, including its trademarks and trade secrets pertaining to precision surface finishing products (*i.e.*, diamond abrasive compounds) and certain related accessories.

As a result of Ltd.'s alleged repudiations and breaches of the 1972 Agreement, Corp. gave notice in December 1990 that it was rescinding the 1972 Agreement. Ltd. denied Corp.'s attempted rescission. Accordingly, pursuant to the 1972 Agreement's binding arbitration clause, Corp. filed a demand for arbitration. The parties jointly selected an experienced Chicago intellectual property attorney, Irwin C. Alter, as the arbitrator (the "Arbitrator").

After an arbitration proceeding that entailed two prehearing conferences, six days of testimonial hearings, closing arguments and a post-hearing conference, the Arbitrator issued a final award on September 5, 1991 (the "Award"). Ltd. has not complied with the Award. Accordingly, Corp. petitions the court, pursuant to Section 9 of the Federal Arbitration Act, for an Order upholding the Award and entering judgment thereon.

Ltd. counter-petitions the court for an Order vacating or modifying the Award. Ltd. asserts that the Award exceeded the Arbitrator's powers in several respects. First, Ltd. argues that the 1972 Agreement prohibited the Arbitrator from mandating that Ltd. change its corporate name. Second, Ltd. argues that the Arbitrator lacked the authority to order Ltd. to assign certain patents (hereinafter, the "Hyplicator Patents") to Corp. Third, Ltd. argues that portions of the Award are barred under English law. Finally, Ltd. argues that the Arbitrator has no power to retain jurisdiction over future disputes concerning the Award.

## DISCUSSION

It is a well-established principle that judicial review of arbitration awards is extremely limited. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–

37, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987); *Chameleon Dental Products, Inc. v. Jackson,* 925 F.2d 223, 225 (7th Cir.1991). When a court is asked to review an arbitration award, its "review is restricted to determining whether the arbitrator actually interpreted the contract." *Id.* If so, then the arbitrator's interpretation governs, even if the arbitrator's award is based upon a misreading of the contract. *Polk Brothers, Inc. v. Chicago Truck Drivers,* 973 F.2d 593, 597 (7th Cir.1992). Any "reasonable doubt" about whether an arbitration award is based upon a contract interpretation (*i.e.,* does the award "draws its essence" from the contract?) is resolved in favor of enforcing the award. *Id.*[1]

■ Furthermore, because contracts have both implied and express terms, the authority of an arbitrator to interpret a contract includes the power to "discover" implied terms:

> " 'as long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute.... In such cases, judicial review is limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement.' "

*Ethyl Corp. v. United Steelworkers of America, etc.,* 768 F.2d 180, 186 (7th Cir. 1985), quoting *Desert Palace, Inc. v. Local Joint Executive Bd.,* 679 F.2d 789, 793 (9th Cir.1982). *See also, Dreis & Krump Mfg. Co. v. Intern. Asso. of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 253 (7th Cir.1986) ("An arbitrator is not obliged to read a contract literally").

**1.** *See also, Hill v. Norfolk & W.R. Co.,* 814 F.2d 1192, 1194–1195 (7th Cir.1987) ("the question for decision by a federal court asked to set aside an arbitration award.... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.")

**2.** Paragraph 13 of the Award provides: "It is further ordered that as of the Termination Date,

Despite the extraordinary judicial deference toward arbitral awards described above, Ltd. contends that the Award exceeded the Arbitrator's powers in several respects. Each of Ltd.'s arguments will be addressed in turn.

### 1. Usage of the Name "Engis"

■ As part of the Award, the Arbitrator ordered Ltd. to delete the word "Engis" from its corporate name after a twelve month phase out period.[2] Ltd. contends that this order to change its name (hereinafter, the "Name Change Order") violates the following provision of the 1972 Agreement:

> "Licensor [Corp.] hereby reaffirms the grant to the Licensee [Ltd.] of the right, license and privilege notwithstanding termination or revocation of this Agreement (with the exception of termination due to non-payment of royalties as is hereinafter set forth in Paragraph 9) to use the name "Engis" in its corporate name."

1972 Agreement at § 1(b)(2).

Ltd. points out that under a literal interpretation of § 1(b)(2), the only situation by which Ltd. could possibly lose the right to use the name "Engis" is if it failed to pay royalties. Since Ltd. has continued to pay royalties, Ltd. argues that the Name Change Order directly contradicts the 1972 Agreement and, hence, exceeds the Arbitrator's authority.

While Ltd.'s argument is appealing, it ultimately fails since, wrongly or rightly, the Name Change Order was premised on the Arbitrator's interpretation of the 1972 Agreement. This is reflected in the following dialogue between the Arbitrator and Ltd.'s Counsel during the arbitration hearing:

> Ltd. shall change its company name and the company names of each of its subsidiaries to a name not using or incorporating the word "ENGIS" or any substantially or confusingly similar word. However, for a period of twelve (12) months after the Termination Date, Ltd. and each of its subsidiaries may use the designation "formerly Engis Ltd." (or Engis B.V., Engis Singapore, Engis Australia, as appropriate) in connection with the new company name."

ARBITRATOR: .... *And that contract [the 1972 Agreement] doesn't expressly say how long you can use that name ["Engis"]; it doesn't have anything other than the fact that you could use the name....*

ARBITRATOR: .... It seems to me that one of the best ways of doing it [avoiding post-termination name confusion among Engis consumers] is to allow you [Ltd.] the use of it [the name "Engis"] for a phase-out time, mentioning the name as formerly being Engis Ltd. That isn't contrary to the contract, and that takes into consideration what the public is going to have to deal with here, and it takes into consideration everybody's property.

LTD. COUNSEL: It is contrary to the contract, I would suggest.

ARBITRATOR: I would like to hear you on that.

LTD. COUNSEL: Page 7. Licensor hereby reaffirms the grant to the licensee of the right, license, and privilege, notwithstanding termination or revocation of this agreement, with the exception of termination due to nonpayment of royalties, to use the name Engis in its corporate name.

ARBITRATOR: *Does that mean forever? Does that mean—what does that mean?*

LTD. COUNSEL: Well, if there is termination, then the contract is over.

ARBITRATOR: *But if you are using the name afterward to show that you were formerly that name, you are using it, aren't you?*

LTD. COUNSEL: Yes, I agree with that. We are using it—but you are putting a limitation....

(Tr. at 1355–57; emphasis added).

■ Furthermore, it is appropriate for an arbitrator to rely on implicit terms in a contract, so long as such implicit terms "can be rationally derived from some *plausible* theory of the *general framework or intent* of the agreement." *Ethyl Corp.*, 768 F.2d at 186 (citation deleted; emphasis added). In the case at bar, an implied time limitation on Ltd.'s use of the name is

certainly plausible, given that the parties presumably did not intend to create consumer confusion as to which Engis entity was which. Indeed, Ltd.'s own counsel conceded at the arbitration hearing that § 1(b)(2) need not be literally interpreted:

"I am saying you can minimize the confusion. You can minimize it. You can cut away at it by not requiring—I mean, requiring that we not, you know, highlight Engis as a name. But in terms of—we could set up a holding company. I mean, Engis Ltd. could maintain itself as a holding company of Kemet Industries, and the product could be manufactured by Kemet Industries."

(Tr. at 1349).

Ultimately, regardless of whether or not the Arbitrator's interpretation of the clause was correct, it clearly was *an interpretation* of the contract. Accordingly, the court affirms it.

### 2. *Assignment of the Hyplicator Patents*

■ As part of the Award, the Arbitrator ordered Ltd. to assign the Hyplicator Patents to Corp. There is no explicit provision in the 1972 Agreement requiring such a transfer, nor is there any provision which precludes such transfers. Nevertheless, Ltd. argues that the Arbitrator lacked the authority to order this patent transfer.

Pursuant to § 5(a) of the 1972 Agreement, Ltd. is required to assign to Corp. the results of research and development *relating* to "accessories" or the "abrasives". The 1972 Agreement defines "abrasives" as "abrasive compositions comprising precious stone abrasive particles or their synthetic equivalents or other abrasive particles of comparative competitive hardness...." (1972 Agr. at p. 2). "Accessories" are defined as "a lubricant to the said abrasives and shall also include "Minimisers" if manufactured by the Licensee...." (1972 Agr. at p. 2). A "Minimiser" is an electronic attachment to a lapping machine. (Ltd. Mem. at 8).

The Hyplicator was developed by Ltd. It is a handheld, manually-operated syringe-

type device that permits the user of diamond compound in paste form (*i.e.,* "abrasives") to apply the required amount precisely without waste. While the Hyplicator Patents do not expressly fall within the 1972 Agreement definitions of "accessories" or "abrasives," the Arbitrator could plausibly determine that the Hyplicator Patents are the result of research and development *relating* to accessories or abrasives.

Furthermore, the Arbitrator had authority to take into account both implied and express contractual terms and also had great flexibility in fashioning an appropriate remedy. *See, e.g., Chameleon Dental Products, Inc.,* 925 F.2d at 226 (arbitrators must be "given flexibility in fashioning appropriate remedies not inconsistent with the terms of the contract or agreement being interpreted"). Because the court finds that the assignment of the Hyplicator Patents was an appropriate remedy not inconsistent with the 1972 Agreement, the court affirms the assignment.

### 3. *Choice of Law*

■ The 1972 Agreement provides that "[t]his Agreement shall take effect *and be construed* in accordance with the laws of the State of Illinois, U.S.A." (1972 Agr. at § 11(b); emphasis added). Ltd. argues that pursuant to this choice of law provision, the parties chose to be governed by *all* Illinois law, including Illinois choice of law rules. Under Illinois choice of law rules, Ltd. argues that English law, rather than Illinois law, must be applied.[3]

Ltd.'s entire choice of law argument is meritless. Ltd. cites absolutely no cases supporting its position, presumably because there are none. Moreover, Ltd.'s argument is directly contradicted by Restatement (Second) of Conflict of Laws § 186 cmt. b (1971):

"Values of certainty of result and of ease of application dictate that the forum should apply the local law of the selected state and not concern itself with the complications that might arise if the forum were to apply that state's choice-of-law rules."

Moreover, Ltd.'s position would render the choice of law provision in the 1972 Agreement effectively meaningless, thereby violating a fundamental rule of contract interpretation that contracts should not be interpreted in a way that renders provisions meaningless. *See, e.g.,* E. Allan Farnsworth, *Contracts* § 7.11 at 516 (2d ed. 1990). Accordingly, the court rejects Ltd.'s proposed nullification of the 1972 Agreement's choice of law provision, and finds that Illinois law should be applied to the 1972 Agreement.

Under Illinois law, the parties' choice of law governs unless:

"(1) the chosen State has no substantial relationship to the parties or the transaction or (2) application of the chosen law would be contrary to a fundamental public policy of a state with a *materially greater interest* in the issue in dispute." (emphasis added).

*Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.,* 209 Ill.App.3d 144, 153, 154 Ill.Dec. 9, 568 N.E.2d 9 (1st Dist.1990).

In the case at bar, there is no evidence that any jurisdiction other than Illinois has a materially greater interest than Illinois. The 1972 Agreement was negotiated in both Illinois and the United Kingdom, was executed in both locations, and calls for performance in both locations. Moreover, the situs of the intellectual property that is the subject matter of the 1972 Agreement is with Corp. in Illinois, at Corp.'s principal place of business. While the United Kingdom certainly has an interest in the issue in dispute since Ltd.'s place of business and incorporation are there, the United Kingdom did not have a "materially greater interest in the issue in dispute" than did Illinois. Therefore, Ltd.'s extensive digression into English law is completely irrelevant.

---

**3.** Accordingly, Ltd. argues that portions of the Award are barred by English law and English public policy. Although Ltd. asserts in its counter-petition that portions of the Award also violate Illinois public policy, this argument is neither pursued nor even mentioned in Ltd.'s memorandum of law supporting its counter-petition. Accordingly, the court deems it waived.

**632**

### 4. The Arbitrator's Retained Jurisdiction

█ Finally, Ltd. argues that the Arbitrator lacks the power to retain jurisdiction over future disputes concerning the Award.[4] In support of its position, Ltd. cites two cases which state that an arbitrator does not have the power to modify or amend an arbitration award once it is issued,[5] and one case for the proposition that an arbitrator's authority eventually ends.[6] Not only does Ltd. fail to provide any support for its proposition that the Arbitrator cannot retain post-Award jurisdiction concerning *enforcement* of the Award, but Ltd.'s position is actually undercut by one of its own citations. In *Dreis & Krump Mfg.*, the Seventh Circuit tacitly approved of arbitrators' retaining jurisdiction to ensure compliance with their awards, but disapproved of retaining jurisdiction to act on requests for reconsideration. *Id.*

Ltd. is, in effect, misconstruing the *functus officio* doctrine, which holds that "after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision." *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir.1985) (underlining added). The doctrine is designed to ensure the finality of arbitration awards by eliminating the arbitrator's power to reconsider or change an award once it has been issued. However, as in *Dreis & Krump Mfg.*, the doctrine does not prohibit an arbitrator from retaining jurisdiction solely for the purpose of ensuring compliance with his award. Prohibiting retention of enforcement jurisdiction would needlessly undermine the arbitration process by requiring either perpetual judicial intervention or the selection of additional arbitrators to resolve future enforcement disputes.

Accordingly, in the case at bar, the Arbitrator's retention of jurisdiction to resolve enforcement disputes was appropriate.

### CONCLUSION

For all of the foregoing reasons, it is hereby ordered that:

(1) The Petition for Order to Confirm the Arbitration Award in the Matter of Arbitration between Engis Corporation and Engis Ltd., Grievance No. 51–133–0055–91H is granted;

(2) The Counter–Petition of Engis Ltd. is denied;  and

(3) Judgment is hereby entered in accordance with the Arbitration Award.

---

**4.** Paragraph 20 of the Award provides: "It is finally ordered that the Arbitrator and the American Arbitration Association, hereby retain jurisdiction over the parties to resolve any differences between the parties concerning enforcement of this Award."

**5.** *Smith v. Smith*, 28 Ill. 56 (1862) and *Brown v. Atwood*, 224 Ill.App. 77 (2d Dist.1922)..

**6.** *Dreis & Krump Mfg*, 802 F.2d at 250.