In the Matter of the Arbitration Between
**HOUSEHOLD MANUFACTURING, INC.,
and KOWIN DEVELOPMENT CORP.**

**No. 92 C 7250.**

United States District Court,
N.D. Illinois, E.D.

March 1, 1993.

---

David B. Bayless, Wilber H. Boies, Catherine A. Brunton, McDermott, Will & Emery, P.C., Chicago, IL, for plaintiff.

J. Patrick Herald, William Michael Sneed, Baker & McKenzie, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

In March 1988, Kowin Development Corporation (Kowin) sued Household Manufacturing, Inc. (Household), now called Eljer Manufacturing, Inc.[1] (Eljer), in a United States District Court in California, alleging fraud and breach of contract in relation to the formation and operation of the joint venture between Kowin–Simonds and the Beijing Steel Files Plant of Beijing, China (the Chinese joint venture). Household invoked an arbitration clause in a contract between

Kowin and Household. In December 1989, the California district court stayed the action and ordered arbitration. The arbitration hearing was conducted in June 1992, before Joseph Kostner (Kostner). On October 30, 1992, Kostner issued an award in favor of Kowin. Before us now is Household's motion to vacate or modify the arbitration award as permitted in the Federal Arbitration Act, 9 U.S.C. §§ 10–11, and Kowin's motion to confirm the award. 9 U.S.C. § 9. For the reasons stated below, the arbitration award is modified in part and confirmed in part.

### FACTS

Our review in this case is confined to determining whether or not the arbitration award should be confirmed. The arbitrator's findings of fact and conclusions with respect to liability have not been challenged and are presumed to be true. Many of the facts are therefore irrelevant and we include here only those that concern the damages award and those that have a direct bearing on our decision.

In 1984, Simonds Cutting Tools, N.A. (Simonds), a division of Household, entered into an agreement with Kowin to form a new corporation, Kowin–Simonds, Inc. (Kowin–Simonds). In turn, Kowin–Simonds entered into a joint venture with the Beijing Steel Files Plant of Beijing, China.

In November 1985, Kowin–Simonds obtained a loan of $2.5 million from the Bank of America, (the Kowin–Simonds loan). The Kowin–Simonds loan took the form of two separate notes, each in the amount of $1.25 million. Kowin guaranteed one note (Note A) and Household guaranteed the other note (Note B). The Bank of China also agreed to pay $1 million for certain manufacturing equipment which the Bank of China would lease to the Chinese joint venture.

Simonds received $3.5 million (the $2.5 million Kowin–Simonds loan and $1 million from the Bank of China) for its equipment. Specified equipment was transferred to the Bank

1. Eljer was sued and participated in the arbitration hearing under its former name Household Manufacturing, Inc. Because all of the agreements, activity and briefing occurred when the company was called Household we will refer throughout this opinion to the entity as "Household."

of China in return for its $1 million payment, and the bank leased this equipment to the Chinese joint venture. Kowin–Simonds purchased the balance of the equipment from Simonds and contributed the equipment to the Chinese joint venture.

The Chinese joint venture failed to make a profit. After the Kowin–Simonds loan became due Kowin and Household each paid off the principal and interest on their respective notes.

On March 17, 1992, Kowin sued Household and Simonds in the United States District Court for the Central District of California, alleging fraud and breach of contract claims related to the formation and operation of the Chinese joint venture. On December 27, 1989, the district court stayed the lawsuit and ordered arbitration to proceed.[2]

Kostner conducted the arbitration hearing during the week of June 22, 1992. On October 30, 1992, Kostner issued his award. The arbitration award did not identify the cause (or causes) of action upon which Kostner found liability against Household and in favor of Kowin. However, there were three separate award amounts (numbered 1–3). The award in part reads as follows:

1.  Household shall pay to the Kos[3] as successors-in-interest to [Kowin] the sum of TWO MILLION NINE HUNDRED SIXTY THOUSAND FIVE HUNDRED FORTY–TWO DOLLARS AND NO CENTS ($2,960,542.00) plus interest at the rate of 10% per annum subsequent to August 1, 1992.

2.  Household shall pay to the Kos as successors-in-interest to [Kowin] the sum of EIGHT MILLION THREE HUNDRED EIGHTY–FOUR THOUSAND THREE HUNDRED SIXTEEN DOLLARS AND NO CENTS ($8,384,316.00) with interest at the rate of 10% per annum subsequent to the date hereof.

3.  Household shall pay to the Kos as successors-in-interest to [Kowin] the sum of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($3,500,000.00) with interest at the rate of 10% per annum from November 27, 1985.

(emphasis in original). In addition, the arbitrator awarded Kowin attorneys fees.

## DISCUSSION

### I. Standard of Review

Judicial review of an arbitration award is extremely narrow. *Flender Corporation v. Techna–Quip Co.*, 953 F.2d 273, 278 (7th Cir.1992); *Moseley, Hallgarten, Estabrook & Weeden v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988). The Seventh Circuit has held that the exclusive grounds for vacating or modifying an arbitration award are specified by sections 10 and 11 of the Federal Arbitration Act (the Act). *Chameleon Dental Products, Inc. v. Jackson*, 925 F.2d 223, 226 (7th Cir.1991). The relevant portions of sections 10 and 11 of the Act read as follows:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (a)(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> > (a) Where there was an evident material miscalculation of figures or an evident

---

**2.** In April 1988, a group of Simonds' management purchased the Simonds' division from Household. The new company, Simonds Industries, Inc. (Simonds Industries), acquired Household's 50% of the Kowin–Simonds shares and assumed the rights and obligations of Household regarding subsequent operations of Kowin–Simonds and the Chinese joint venture.

**3.** On January 31, 1990, the Kos became the successors-in-interest to Kowin. (Household appdx. at 54).

material mistake in the description of any person, thing or property referred to in the award.

\*    \*    \*    \*    \*    \*

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Until recently the Seventh Circuit has not applied the "manifest disregard of the law" grounds for attacking an arbitration award. *Chameleon Dental*, 925 F.2d at 226. However, in *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir.1992), the court recognized that an arbitration award could be vacated for manifest disregard of the law in limited circumstances where it was shown that there was "something beyond and different than mere error in law or failure on the part of the arbitrator to understand and apply the law; it must be demonstrated that the majority of the arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did." Therefore, the *Health Services* court narrowly applied the manifest disregard of the law standard for vacating an arbitrator's award—limiting it to those cases where the arbitrator had deliberately disregarded the law.

■ While the parties go into great detail explaining and discussing the ramifications of *Health Services*, it is not necessary for us to further consider that case. *Health Services* did not stretch the existing precedent very far and, in this case, Household relies primarily on statutory grounds in support of its motion to vacate the arbitrator's award. Therefore, the award may be overturned where the arbitrator deliberately disregarded the law, where there was an evident material miscalculation of figures, where the arbitrator exceeded his or her powers, or as otherwise stated in sections 10 and 11 of the Act.

## II. *Review of the Arbitrator's Award*

■ Kowin maintains that the arbitrator's award is a "lump sum" award divided into distinct elements in order to assign different interest periods to the various elements. Kowin argues, therefore, that as a matter of law the award is not subject to challenge and is immune from judicial review. Kowin disputes Household's segregation of the award into first, second, and third damage awards. It argues that such a division is pure speculation since it is impossible to determine what the three damage amounts represent or how the arbitrator came up with those three numbers.

We disagree. The award does not provide a lump sum damage amount, but clearly states three damage amounts that match to the penny the proposed damages set out by Kowin in its post-hearing brief. The damage awards are distinct from each other on the face of the arbitrator's decision, and we can ascertain the specific types of damages to which the amounts correspond by referring to Kowin's post-hearing brief. We therefore review the damage awards individually, in accordance with the standards set forth above in section I.

■ The first award of $2,960,542 represents the entire principal amount of the Kowin–Simonds loan ($2,500,000) plus interest ($460,542). (Household appdx. at 53). It is undisputed that Household, as guarantor, paid the full principal ($1,250,000) and interest on Note B when the Chinese joint venture failed.[4] This represents half of the $2,500,000 principal balance of the Kowin–Simonds loan. That damage award therefore includes an amount of $1,250,000 that was already paid by Household. Household cannot be required to pay the same amount twice. The first damage award involves an evident and material miscalculation of figures since it includes an amount that Household already paid. The award must therefore be reduced from $2,960,542 to

---

4. Kowin does not dispute the fact that Household paid the $1,250,000 note amount and, in fact, in its post-hearing brief states that the $2,960,542 includes the "$1.25 million paid by Household and/or Simonds." We further point out that

Kowin stated in its post-hearing brief that the interest Household and/or Simonds paid was excluded from the $2,960,542 amount. (Household appdx. at 53).

$1,710,542. This adjusted award reflects the principal amount of Note A ($1,250,000) plus the interest on that note ($460,542).

■ The second award of $8,384,316 represents Kowin's share of future lost profits of the Chinese joint venture over twenty years ($8,384,066), plus Kowin's capital contribution to Kowin–Simonds ($250). (Household appdx. at 53). Household argues that the lost profits portion of the second damage award "should be vacated or modified because the arbitrator exceeded his authority and manifestly disregarded long established, fundamental legal principles regarding the award of future lost profits." (Household brf. at 19–20). We disagree.

First, Kostner did not exceed his powers or fail to make a "mutual, final and definite award upon the subject matter submitted." 9 U.S.C. § 10(d). To the best of our knowledge the arbitration agreement does not preclude the awarding of lost profits, and the subject matter of the case, the failed joint venture, clearly gave rise to the issue of lost profits.

Second, Household maintains that the arbitrator manifestly disregarded fundamental legal principles regarding future lost profits. While Household makes several arguments as to why Kowin should not recover lost profit damages, Kowin puts forth arguments as to why it should be entitled to lost profits. The issue, however, is not whether Kowin was or was not entitled to lost profits, but whether the arbitrator, in granting the award, deliberately disregarded the law.[5] We do not believe he did.

■ Deliberate disregard of the law means the arbitrator willfully ignored existing law when reaching his decision. Perhaps a court could infer deliberate disregard for the law when the law could not support the arbitrator's decision. The arbitrator in this case did not set forth his reasons for awarding lost profits to Kowin, and it is not our job to speculate as to his reasoning or as to what law he relied upon. What we must consider is whether the facts, as we know them, are such that Kostner could have concluded that an award of lost profits was supported by law—whether or not we agree with his interpretation or application of the law. *Health Services,* 975 F.2d at 1267 (stating that to vacate the award there must be more than mere error in law or failure of the arbitrator to understand or apply the law); *Moseley,* 849 F.2d at 272 (noting that an award can be set aside only if injustice results and not because of an error on the part of the arbitrator in his interpretation of the law). And some courts have awarded lost profits to plaintiffs in what could be considered similar types of circumstances. For instance, although lost profits generally are not awarded in cases involving startup companies, some courts have awarded lost profits after finding that companies that appeared to be new businesses in fact were existing businesses that merely had taken new forms.[6] *See e.g., Hallmark Insurance Administrators, Inc. v. Colonial Penn Life Insurance Co.,* 697 F.Supp. 319, 327 (N.D.Ill.1988); *S. Jon Kreedman & Co. v. Meyers Brothers Parking—Western Corp.,* 58 Cal.App.3d 173, 130 Cal.Rptr. 41, 49 (1976); *Maggio, Inc. v. United Farm Workers of America, AFL–CIO,* 227 Cal.App.3d 847, 278 Cal.Rptr. 250, 264 (1991). We note that the profits figure is related to Household's own projections. Therefore, we cannot conclude that Kostner acted with deliberate disregard of fundamental legal principles when he awarded future lost profits.[7] The second award stands.

■ The third award of $3,500,000 represents restitution from Household on a theory of unjust enrichment. (Kowin post-hearing

---

5. We also consider the statutory basis for vacating or modifying awards as mentioned by Household and as discussed in the previous paragraph.

6. In its brief, Kowin argues that the joint venture was not a start-up business in the traditional sense. Kowin points out that Household's Simonds division was the established leader in the file business, teaming up with an established leader in the file manufacturing business in China, to do what Simonds had done for 150 years.

They further note that each of these two companies had a well established track record in the business.

7. Kowin points to several other cases where lost profits were awarded in order to point out that the arbitrator could have been relying on a number of legal theories when he awarded lost profits.

brf. at 62). The $3,500,000 which Household received for the equipment consisted of the $2,500,000 Kowin–Simonds loan and the $1,000,000 payment from the Bank of China.[8] The Kowin–Simonds loan was considered in the first award, and it was a miscalculation for the arbitrator to award Kowin the same damage award twice.[9] The third damage award therefore must be modified by deducting the $2,500,000 loan amount.

Our review of the arbitrator's award can go no further. Although Household makes several arguments for other reductions,[10] those items are not within the scope of our review. It is not our place to reevaluate every item Household thought should or should not have been included in the damages awarded. That was job of the arbitrator. Our task is to examine the award on its face to determine whether or not grounds exist to vacate or modify it.

We conclude that the first award should be modified and reduced to $1,710,542 and the third award to $1,000,000.

---

8. Kowin does not dispute that the $3,500,000 that Household received for the sale of the equipment was made up of these two components.

9. We decreased this award by $1,250,000 for the amount which Household and/or Simonds had already paid.

10. For example, Household argues that the third award should be reduced by an additional $1,000,000 because it does not represent a loss suffered by Kowin. In addition, Household maintains that the first damage award should be reduced by $500,000 to reflect the amount that Kowin allegedly received from Simonds when the joint venture was formed.