2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
FITIGUES, INC., LRV Corporation, FNP Store Corporation,
Steven Rosenstein and Andrea Levinson, Plaintiffs-appellants,
v.
Joshua VARAT, and Varat Enterprises, Inc., Defendants-appellees.
 No. 92-4161.
 United States Court of Appeals, Seventh Circuit.
 Argued June 8, 1993.
Decided Aug. 18, 1993.
 
 Before COFFEY and MANION, Circuit Judges, and ALDISERT, Senior Circuit Judge.*
 
 ORDER
 
 1
 Appellants, who were parties to a commercial arbitration proceeding, unsuccessfully sought to have the district court vacate certain elements of the arbitrator's award and now appeal to this court for relief. For the following reasons, we affirm the order of the district court which has been certified as a final judgment under Rule 54(b), Federal Rules of Civil Procedure.
 
 
 2
 Andrea Levinson and Steven Rosenstein are shareholders, directors and officers of Fitigues, Inc., FNP Stores Corporation and LRV Corporation; these individuals and corporations are the appellants and will be referred to collectively as "Fitigues." Fitigues, Inc., an Illinois corporation in the business of marketing sportswear and related goods, is the exclusive merchandiser and marketer of the Fitigues clothing line. FNP Stores Corporation owns and operates certain retail stores which sell Fitigues products. LRV Corporation owns and controls the Fitigues trademark. Fitigues has appealed from the adverse order of the district court.
 
 
 3
 The appellees are Varat Enterprises, Inc., the exclusive manufacturer of the Fitigues clothing line, and Joshua Varat, its chief executive officer and a principal shareholder (collectively "Varat").
 
 
 4
 Jurisdiction was proper in the trial court based on 28 U.S.C. Sec. 1332(a)(1). This court has jurisdiction under 28 U.S.C. Sec. 1291, pursuant to the district court's entry of an order under Rule 54(b), Fed.R.Civ.P. Fitigues, Inc. v. Varat Ent., Inc., 813 F.Supp. 1336 (N.D.Ill.1992). Appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure. Although both appellees are participating in reorganizations under Chapter 11, the bankruptcy courts have lifted the statutory automatic stays for the purpose of our adjudicating this appeal. In re Varat, No. 93-72251 (Bankr.D.S.C. June 1, 1993); In re Varat Ent., Inc., No. 93-30411 (Bankr.W.D.N.C. May 18, 1993).
 
 
 5
 Reduced to its essence, this case is a matter of statutory construction of 9 U.S.C. Sec. 10(a), under which the federal courts may vacate an arbitration award only in limited circumstances:
 
 
 6
 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 
 
 7
 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 
 
 8
 Fitigues contends that the arbitrator was guilty of violating these statutory provisions in three respects: (a) in determining that Varat could sell its pre-Fall 1990 inventory, subject to Fitigues' right of first refusal; (b) in determining that Varat did not overcharge Fitigues for garment pressing and other services; and (c) in awarding damages to Varat for lost profits. Varat answers these contentions on the merits and also moves for dismissal of the appeal, based on section 5.18 of the amended settlement agreement, which provides that each party "waives any right to contest the validity or enforceability of [the arbitration] award." However, it is evident from the record and from oral argument that Varat did not present this waiver argument in the district court until after the court had ruled on the merits of Fitigues' challenge to the arbitration award. Reply Memorandum in Support of Varat's Motion to Dismiss Appeal (filed Jan. 26, 1993), at 2-3. We thus conclude that the waiver issue was not timely presented, and accordingly we will meet the contentions on the merits. We affirm the district court's order.
 
 I.
 
 9
 Fitigues and Varat entered into a settlement agreement resolving disputes that had been litigated in the Northern District of Illinois. They later amended the agreement. Like its predecessor, the amended settlement agreement established Varat as the exclusive manufacturer of Fitigues' clothing line. Three clauses of the agreement are particularly relevant in this appeal.
 
 
 10
 Section 1.14(b) of the amended settlement agreement authorizes Varat to sell certain pre-Fall 1990 inventory, subject to Fitigues' right of first refusal.
 
 
 11
 Section 1.15 is a restrictive covenant, providing in part as follows:
 
 
 12
 During the period Varat [Enterprises] shall directly or indirectly manufacture Exclusive Goods and Exclusive Goods for Fitigues, and for a period of two (2) years after Varat shall cease such manufacture, Varat or any affiliate of [Joshua Varat] or Varat [Enterprises], shall not, without the prior written consent of Fitigues ... sell, promote and/or merchandise any apparel ... (i) utilizing thermal or confetti fabric, or (ii) that in any way copies any styles, set forth on Exhibit E attached hereto provided.
 
 
 13
 * * *
 
 
 14
 Section 5.18 is the arbitration clause, but it contains a provision conferring upon Fitigues the election "to judicially enforce the restrictions of Section 1.15."
 
 
 15
 Various disputes arose after the execution of the amended settlement agreement, and Varat filed an action in a South Carolina state court alleging a breach. Fitigues then instituted this action in the federal district court to compel arbitration and to enjoin Varat from manufacturing, selling or in any way promoting Fitigues merchandise without Fitigues' written consent. In response Varat filed a demand for arbitration in the Atlanta division of the American Arbitration Association.
 
 
 16
 Fitigues then filed an amended complaint charging Varat with breach of the amended settlement agreement, and the district court issued a preliminary injunction prohibiting Varat from disposing of any goods bearing the Fitigues label without Fitigues' written consent. This preliminary injunction was to remain in effect pending disposition of the arbitration proceeding. Subsequently, both the South Carolina state court and the district court action were stayed pending the outcome of arbitration.
 
 
 17
 Professor Harriet E. King of Emory University was selected as arbitrator and conducted the arbitration hearing in Atlanta from December 16 to December 20, 1991. After the submission of post-hearing affidavits, the arbitrator rendered her award on March 24, 1992. The award contained seventeen findings, resulting in the net transfer in monetary damages of $356,944.94 from Fitigues to Varat. Upon the request of both parties, Professor King clarified the award on May 30, 1992.
 
 
 18
 The district court denied Fitigues's request to partially vacate the arbitration award and granted Varat's motion for an order confirming the arbitration award.
 
 II.
 
 19
 The standards of judicial review of arbitration proceedings are familiar. "[T]he arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the ... contract because it exceeds the confines of interpreting and applying the contract. [citations omitted] 'Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as his award complies with the aforementioned standards to be applied by the reviewing court in exercising its limited function.' " Randall v. Lodge No. 1076, Int'l Ass'n of Machinists & Aerospace Workers, 648 F.2d 462, 465 (7th Cir.1981).
 
 
 20
 In determining whether the issues decided by the arbitrator were actually within the scope of the arbitration clause, "[the court's] review is restricted to determining whether the arbitrator actually interpreted the contract." Chameleon Dental Prods., Inc. v. Jackson, 925 F.2d 223, 225 (7th Cir.1991); see also Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 279 (7th Cir.1992) ("Because the arbitrator's award reflects his interpretation of the contract, our review is at an end"); Chicago & North Western Transp. Co. v. United Transp. Union, 905 F.2d 171, 173 (7th Cir.1990) ("[A] federal court is to determine only whether or not the arbitrator interpreted the agreement, not if the arbitrator's interpretation of the agreement is correct.").
 
 
 21
 We believe that appellants must surely recognize these well-known limitations of judicial review of arbitration awards but nonetheless attempt to circumvent these restrictions by labelling the arbitrator's actions as "misconduct," "misbehavior" or in excess of her authority and therefore violative of 9 U.S.C. Sec. 10(a).
 
 III.
 
 22
 Fitigues first argues that the arbitrator had no authority to determine Varat's right to sell its pre-Fall 1990 inventory, because the arbitration clause expressly granted Fitigues the right to a judicial determination of Section 1.15 as set forth in Section 5.18 of the amended settlement agreement. Section 1.15 is the restrictive covenant, which prohibits Varat from selling certain styles of clothing without the prior written permission of Fitigues. Fitigues seeks to enforce this provision to prevent Varat from selling the pre-Fall 1990 inventory.
 
 The arbitrator concluded:
 
 23
 Section 1.14(b) of the amended settlement agreement is "prior written consent" of [Fitigues] within the meaning of 1.15 of the amended settlement agreement. Therefore, [Varat] is entitled to sell the inventory manufactured prior to Fall 1990 subject to [Fitigues'] right of first refusal as set out in section 1.14(b) of the amended settlement agreement.
 
 
 24
 Arb. Award. at 2.
 
 
 25
 The district court concluded that under the applicable standard of review the arbitrator's determination could not be upset:
 
 
 26
 Here, we are satisfied that the arbitrator interpreted the amended settlement agreement. Professor King received briefs and oral arguments from both parties on this issue, ultimately agreeing with Varat that the Sec. 1.14(b) inventory was unrelated to Fitigues' pending judicial enforcement of Sec. 1.15 and, hence, was an arbitrable issue. Though the reasoning set forth by the arbitrator is somewhat circuitous--interpreting Sec. 1.14(b) in terms of Sec. 1.15 to find Sec. 1.15 inapplicable to Sec. 1.14(b)--her conclusion is plausibly drawn from the language of the amended settlement agreement. Her interpretation need not be correct, but only plausible.
 
 
 27
 D.Ct.Op. at 7. We agree with the district court's analysis, and no additional discussion is necessary. That Section 5.18 permitted judicial enforcement of Section 1.15 did not prevent the arbitrator from making reference to it for the purpose of analogy in interpreting Section 1.14(b). It was neither misconduct nor misbehavior under the arbitration statute nor did the arbitrator exceed her authority.
 
 IV.
 
 28
 Fitigues next contends that misconduct occurred when the arbitrator permitted Varat to file an affidavit, after testimony was closed, on Varat's performance of certain pressing services for which Fitigues was charged. The arbitrator denied Fitigues' claim for damages for alleged overcharges concerning these and other services. At oral argument, counsel for Fitigues stated that both parties were permitted to file post-hearing affidavits simultaneously. Fitigues argues that it should have been given an opportunity to cross-examine Varat's affiant.
 
 
 29
 During arbitration, Fitigues also requested that the arbitrator sign a subpoena duces tecum requiring Varat to produce certain accounting and financial documents. The arbitrator declined to do so.
 
 
 30
 Fitigues argues that, in allowing the post-hearing affidavit to be filed and in refusing to sign and enforce the subpoena duces tecum, the arbitrator was "guilty of ... misbehavior by which the rights of [Fitigues] have been prejudiced." Appellants Br. at 18 (citing 9 U.S.C. Sec. 10(a)(3)).
 
 
 31
 The district court was not impressed and noted that the commercial arbitration rules of the American Arbitration Association permit arbitrators to accept and consider post-hearing evidence. Rule 32 of the association provides in pertinent part:
 
 
 32
 The arbitrator may receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission. If the ... arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator.
 
 
 33
 The district court properly observed that--" '[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.' " Flender Corp., 953 F.2d at 280 (quoting Hoteles Condado Beach v. Union de Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir.1985)). Arbitrators enjoy wide latitude in the conduct of an arbitration hearing. An arbitrator is not constrained by formal rules of evidence or procedure, but rather need only grant the parties a fundamentally fair hearing. Id. at 280 n. 13.
 
 
 34
 D.Ct.Op. at 9. Given that Fitigues was allowed to present evidence and participate in a five-day arbitration hearing, the district court concluded that the arbitration was not fundamentally unfair. Id. We are satisfied that the arbitrator was not guilty of misconduct as contemplated under 9 U.S.C. Sec. 10(a)(3) in her consideration of the affidavit.
 
 
 35
 Similarly, the district court concluded that the arbitrator's refusal to sign or enforce the subpoena duces tecum did not constitute misbehavior:
 
 
 36
 [B]y agreeing to arbitrate, a party 'trades the procedures and opportunities of a courtroom for the simplicity, informality, and expedition of arbitration.' " Gilmer v. Interstate/Johnson Lane Corp., 111 S.Ct. 1647, 1655 (1991) (quoting [Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628 (1985) ].... Prior to the hearing, Fitigues was allowed access to Varat's facilities for five days to inspect certain records. The arbitrator, who was familiar with the issues to be arbitrated, regulated Fitigues' access to those certain documents, apparently believing that such inspection was sufficient for Fitigues to build its case. The arbitrator possessed the discretion to determine that the documents Fitigues sought to subpoena were not relevant.
 
 
 37
 D.Ct.Op. at 9-10. We are satisfied with the district court's analysis of the affidavit and subpoena issues.
 
 V.
 
 38
 Fitigues' final argument is that the arbitrator committed misbehavior in calculating lost profits for the 1991 holiday season. Specifically, Fitigues challenges the arbitrator's refusal to sign and enforce the subpoena duces tecum discussed above, and her failure to include a detailed calculation of damages in the arbitration award. Although Fitigues' brief and oral argument did not make this clear, the contention seems also to be that "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. Sec. 10(a)(4).
 
 
 39
 Fitigues argues that "Varat did not produce one shred of evidence in support of its claim for lost profits, other than the bald statement of Joshua Varat that these monies are owed." Appellants Br. at 19. At bottom, this contention goes to the weight or credibility of the evidence. This was for the arbitrator, and in making a credibility finding, the arbitrator was not guilty of misconduct or misbehavior nor did she exceed her powers or imperfectly execute an award as contemplated by 9 U.S.C. Sec. 10(a)(3) and (4).
 
 
 40
 This too must be said. A national policy expressed by the National Labor Relations Act and the Title 9 Commercial Arbitration Act strongly favors the resolution of disputes by arbitration where the parties have so agreed. Explicit in these statutes and uniformly expressed in judicial opinions is the concomitant precept that judicial review of arbitration awards is severely restricted. We believe that the appellants in this case have attempted an end run around the settled jurisprudence of arbitration by making totally unfounded accusations of misconduct and misbehavior by the arbitrator in these proceedings. To disagree with an award is one thing, and it is permissible to do so in a courtroom, within the strict confines of limited judicial review. But to couch this disagreement in the form of groundless ad hominem accusations against an arbitrator, a quasi-judicial officer, is quite another thing and does not comport with the highest ideals of business practice and commercial litigation.
 
 
 41
 We have considered all contentions presented by the appellants. To the extent not discussed herein, their other arguments have been considered and rejected.
 
 
 42
 We grant Varat's motion to file its Reply Memorandum in Support of Its Motion to Dismiss the Appeal. The motion to dismiss is denied. The order of the district court is AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation