FLENDER CORPORATION, Plaintiff–Appellant,

v.

TECHNA–QUIP COMPANY and Robert J. McGuire, Defendants–Appellees.

Nos. 89–2781, 89–3045 and 91–1268.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1991.

Decided Jan. 6, 1992.

---

Michael T. Reid (argued) and Thomas F. Roche, Halfpenny, Hahn, Roche & Marchese, Chicago, Ill., for plaintiff-appellant.

Alan S. Madans (argued), Daniel Cummings and John Dalton, Rothschild, Berry & Myers, Chicago, Ill., for defendants-appellees.

Before RIPPLE and KANNE, Circuit Judges, and NOLAND, Senior District Judge.*

RIPPLE, Circuit Judge.

Flender Corporation (Flender) terminated its sales agency agreement with Techna–Quip, Inc. The agreement contained an arbitration clause. After the district court denied Flender's application to stay arbitration, the arbitrator determined that Flender had breached the sales agency agreement. The district court confirmed the arbitrator's decision and later approved the damages due under the arbitrator's award. Flender now appeals. For the following reasons, we affirm.

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

# I
# BACKGROUND

## A. *Facts*

In 1978, Robert McGuire became a sales representative for Flender, a manufacturer of power transmission equipment and related products. At that time, McGuire was doing business as Technadyne, Inc., though McGuire subsequently began doing business as Techna–Quip, Inc. Despite the name of these entities, neither was actually a corporation. In 1979, McGuire signed a written sales agreement between the unincorporated Techna–Quip, Inc. and Flender. In 1980, Techna–Quip, Inc. was incorporated by McGuire and Donald Koenig; each man owned half of the corporation's stock. McGuire continued to handle the Flender account; Koenig represented other manufacturers.

In 1984, Techna–Quip, Inc. and Flender entered into a Sales Agency Agreement (the Agreement), which engaged Techna–Quip, Inc. to act as Flender's sales agent in a nine-state territory. The Agreement had a three-year term, required six months' notice of nonrenewal and provided for Techna–Quip to be compensated on a commission basis. The Agreement also included an arbitration clause:

> Any controversies or claims relating to any aspect of this agreement, or to its breach, or to the relationship created shall be settled by arbitration under the rules of the American Arbitration Association in the State of Illinois.... The parties agree to abide by the arbitrator['s] decision and also that a judgment may be entered upon his award in any court having jurisdiction.

A non-assignment clause also was contained in the Agreement:

> This Agreement is personal to the parties and may not be assigned to any person, firm or corporation.

Because neither party gave notice of nonrenewal, on February 1, 1987, the Agreement automatically renewed for three additional years.

In January of 1987, McGuire and Koenig decided to dissolve the corporation, Techna–Quip, Inc. They intended the dissolution to be effective April 1, 1987. Both McGuire and Koenig intended to form sole proprietorships with each retaining the accounts he had handled at Techna–Quip, Inc. In February 1987, Flender was informed of the forthcoming dissolution. Walter Bogaerts, Flender's vice president of sales and marketing, told McGuire, "[T]hat's okay. When we look at Techna–Quip, we always look at a one-man organization." Tr. Vol. 6 at 5.

McGuire later was informed that Flender's new president wanted all Flender representatives to have short-term contracts. McGuire told Flender that he would renegotiate his existing contract (the renewed three-year contract), but also stated that a six-month notice for termination and a two-year term were his minimum requirements. Flender executives reviewed McGuire's offer and also discussed the then-renewed 1984 Agreement. They apparently concluded that, because the contract could not be assigned to any person, the contract would terminate upon the dissolution of Techna–Quip, Inc. Flender then offered McGuire a one-year contract, which McGuire rejected. Several other contracts were proposed by each party, but Flender and McGuire were unable to reach any agreement.

On June 4, 1987, Flender decided to break off further negotiations with McGuire. Flender advised McGuire that it considered the dissolution of Techna–Quip, Inc. to have terminated all agreements between Flender and Techna–Quip, Inc. Techna–Quip, Inc. was paid commissions on all orders received by Flender prior to April 1, 1987. McGuire was paid commissions on all orders received by Flender from April 1, 1987 through June 4, 1987. Techna–Quip, Inc. was formally dissolved on June 8, 1987; McGuire continued doing business as Techna–Quip Co.

## B. *Procedural Posture*

Techna–Quip Co. (now operating as a proprietorship) filed an arbitration claim against Flender, claiming that Flender had wrongfully terminated the Agreement over

two years before its expiration date. Flender then filed suit in the Northern District of Illinois in an attempt to enjoin the arbitration. Flender contended that its Agreement with Techna–Quip, Inc. had terminated when the corporation dissolved and that the dispute was not arbitrable under the Agreement.

In February of 1988, the district court denied an application by Flender to stay the arbitration. In April of 1988, Flender again moved to enjoin the arbitration, and the court again denied Flender's application. The court then stayed further proceedings until the conclusion of the arbitration and directed the parties to arbitrate.

The parties proceeded with the arbitration. McGuire testified that neither Flender nor any other manufacturer had ever indicated any interest in whether his business was a corporation or some other kind of entity. He also stated that the understanding in the industry is that the representative cannot sell his business to another firm with which the manufacturer is not familiar. "Selling his stock in Techna–Quip, Inc. to a stranger thus would have violated the no-assignment clause, but McGuire's change of the form of his business did not." Appellee's Br. at 9. Flender continued to adhere to its position that the dissolution of Techna–Quip, Inc. terminated the Agreement and rendered the present dispute not subject to arbitration.

On November 4, 1988, the arbitrator issued his award. He found that the contract of February 1, 1984 had been extended for an additional three-year term on February 1, 1987. He rejected Flender's argument that Techna–Quip, Inc.'s dissolution terminated the contract. Instead, the arbitrator found that Flender had "by the words and conduct of its employees agreed that Robert McGuire could succeed" to Techna–Quip, Inc.'s position under the contract. The award ordered Flender to pay McGuire commissions on all sales within the territory through January 31, 1990, and to supply documentation necessary to verify the accuracy of the payment.

The district court confirmed the arbitration award on July 14, 1989, and ordered Flender to produce documents from which commissions could be calculated. Subsequently, based on the parties' agreement, the court entered judgment for damages.

## II

## ANALYSIS

Flender challenges both the district court proceeding that resulted in the direction to the parties to arbitrate their dispute and the arbitrator's award itself.

### 1.

In challenging the district court proceedings, Flender contends (1) that the district court improperly required the arbitrator to determine whether the dispute was subject to arbitration and (2) that if the district court did decide the issue of arbitrability, it decided it wrongly.

Section 4 of the Arbitration Act governs the proceedings by which a district court may compel arbitration. It states, in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is

filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

Flender is correct in stating that the district court was required to decide whether the dispute was arbitrable. However, his assertion that the district court left the issue to the arbitrator is clearly contradicted by the record. The governing legal principle is, as Flender suggests, clear. As Judge Wood noted in *Wilson Wear, Inc. v. United Merchants & Manufacturers, Inc.*, 713 F.2d 324, 327–28 (7th Cir.1983), the doctrine of severability announced by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), requires that the court focus solely on the arbitration clause and determine whether there is an agreement to arbitrate the underlying dispute. If the court determines that the underlying dispute is within the ambit of the arbitration agreement, resolution of that dispute is for the arbitrator. *Accord Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980). This principle is applicable even when the underlying dispute involves the validity of the entire contract. *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir.1985); *Sauer–Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Our colleagues in the Second Circuit, relying in part on Judge Wood's opinion in *Wilson Wear*, have summarized the principle in these terms:

> In an action to compel arbitration, the function of the court is limited to determining whether there is an agreement to arbitrate the underlying dispute and, if so, whether the agreement to arbitrate has been breached. Where the scope of the agreement is unlimited, issues addressed to the liability of the parties and to the cancellation of the underlying agreement, rather than the agreement to arbitrate, are to be determined by the arbitrator.

*Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A.*, 759 F.2d 1027, 1031 (2d Cir.1985).

Our examination of the record in its entirety convinces us that the district court was faithful to this principle. At a hearing on Flender's motion to enjoin arbitration in February of 1988, the district court recognized its duty to decide whether the issue was arbitrable, but expressed a preference for deferring that decision until after the arbitration. However, after Flender filed another motion to enjoin arbitration, the court reviewed the applicable law and "determined that the parties are bound to proceed to arbitration." Appellant's App. at 12. The district court then directed the parties "to proceed with arbitration in accordance with the terms of the agreement." *Id.* at 13. In so ruling, the district court explicitly articulated the principle that we have discussed in the previous paragraph. *Id.* at 9–11. Moreover, it grounded its decision in the broad wording of the contract's arbitration clause, which states that "[a]ny controversy or claims relating to any aspect of this agreement, or to its breach, or to *the relationship created* shall be settled by arbitration." *Id.* at 8 (emphasis supplied). In short, the district court simply ruled that the broad arbitration clause rendered the dispute arbitrable and that the arbitrator should decide the merits of the underlying controversy.

The district court was correct not only with respect to its methodology but also with respect to its result. The arbitration clause is indeed broad and, given the nature of the agreement in question, the district court was on firm ground in determining that the parties intended to include within the scope of the arbitration clause any change in the distributor's legal structure.

Arguing by analogy to *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), Flender contends that the arbitration clause bound Flender to arbitrate with Techna–Quip, Inc., the other party to the contract; it asserts that the contract did not bind it to

arbitrate with McGuire or Techna–Quip Co., the sole proprietorship, which were not parties to the contract. Thus, Flender submits that the issue of McGuire's succeeding to Techna–Quip, Inc.'s rights under the contract was the threshold issue that the district court had to resolve in order to determine whether the dispute was arbitrable. Accepting such an argument would allow Flender to circumvent the intent of the broad arbitration clause at issue here that required Flender to arbitrate with respect to "the relationship created" under the contract—a phrase certainly broad enough to include Flender's relationship with McGuire, the only owner of Techna–Quip with whom Flender did business. Although Flender's argument pretends to be a challenge only to the validity of the arbitration clause, it is, in fact, the same challenge that Flender raises to the validity of the entire contract. Flender raises no real separate challenge to the arbitration clause itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (a claim of fraud in the inducement of the entire contract is arbitrable if the arbitration clause evidences that the parties so intend; a claim of fraud in the inducement of the arbitration clause is for the court to decide).[1] Stripped of its window-dressing, this argument is an attack on the arbitrator's resolution of the merits—his finding that the contract continued in force notwithstanding the dissolution of Techna–Quip, Inc. We reiterate "this circuit's caution against allowing a party to use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award." *Burkart Randall v. Lodge No. 1076,* 648 F.2d 462, 467 (7th Cir.1981); *see also Amoco Oil Co. v. Oil Chem. & Atomic Workers Int'l Union,* 548 F.2d 1288, 1295 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).[2]

**2.**

Flender also raises legal and factual challenges to the arbitration award. Flender's objections include an argument that there is no factual basis for the arbitrator's determination that Flender by its "words and conduct" agreed that McGuire could succeed to Techna–Quip, Inc.'s contract.[3] Also, Flender argues that the arbitrator's finding that McGuire succeeded to the contract results in an impermissible oral modification of the arbitration clause.

We forbear comment on the legal and factual correctness of Flender's contentions, because, as we shall see, the arbitration award clearly meets the requirements which our limited power of review imposes. " 'Arbitration is an alternative to the judicial resolution of disputes, and an extremely low standard of review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true resolution.' " *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis,* 849 F.2d 264, 267 (7th Cir.1988) (quoting *E.I. DuPont de Nemours v. Grasselli Employees Indep. Ass'n,* 790 F.2d 611, 614 (7th Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 186, 93

---

**1.** *See also Matterhorn Inc. v. NCR Corp.,* 763 F.2d 866, 872 (7th Cir.1985) ("issues going to the validity of the entire contract, including the arbitration clause, are for the arbitrator when the parties so intend"); *Wilson Wear, Inc. v. United Merchants & Mfrs., Inc.,* 713 F.2d 324, 327 (7th Cir.1983) ("a court must first determine whether the issue of making or unmaking concerns the arbitration clause itself or the entire contract and only then, may the court determine whether it or the arbitrator should resolve the issue").

**2.** Flender's analogy to *John Wiley & Sons* limps. Not only does that case deal with the special problem of successorship in labor relations but it is also grounded in the concern that the party

being ordered to arbitrate, Wiley, had never signed the collective bargaining agreement at issue. Here, Flender had signed the agreement. More fundamentally, as we have already noted, Flender had agreed in that contract to a broad arbitration clause that encompassed "any aspect of this agreement ... or to the relationship created."

**3.** Flender also contends that, because there was no contract between Flender and McGuire, the arbitrator had no authority to find that he had power to arbitrate McGuire's claims against Flender. Since we have already determined that the district court properly ruled that the dispute was arbitrable, we need not address this contention.

L.Ed.2d 120 (1986)).[4] Therefore, this court has noted that "[t]he chances for a successful appeal of an arbitration award are not particularly good. When asked to set aside an arbitration award, our review is restricted to determining whether the arbitrator actually interpreted the contract." *Chameleon Dental Prods., Inc. v. Jackson*, 925 F.2d 223, 225 (7th Cir.1991). "[O]nce the court is satisfied that [the arbitrator] interpreted the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrator[ ] [has not] ordered anyone to do an illegal act." *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir.1987).[5] Nevertheless, if we determine that the arbitrator clearly went beyond the terms of the contract to reach the outcome indicated in his opinion, we will set aside and vacate an arbitration award.[6]

■ Here, the arbitrator's award makes clear that his decision was based on an interpretation of the Agreement. Because the arbitrator's award reflects his interpretation of the contract, our review is at an end. In so holding, we necessarily do not indicate whether the arbitrator's interpretation of the contract would have been our own. To do so would be to venture into forbidden territory. The Supreme Court has emphasized that a court must not substitute its view of the contract for that of the arbitrator.[7] Given our limited review of an arbitration award, we must decline Flender's invitation to overturn the arbitrator's decision on the merits.

### 3.

Flender next attacks the arbitration award on the ground that it is not final and definite. The Arbitration Act, 9 U.S.C. § 10(a)(4), provides for vacating an award if a "final and definite award upon the subject matter submitted was not made." The arbitrator's award must be vacated, argues Flender, because it fails to fix or specify the amount of commissions payable. Moreover, Flender contends that the district court improperly interjected itself into the arbitration process by quantifying the amount of commissions payable and by entering partial judgment against Flender.

■ It is well-settled that the district court generally may not interpret an ambiguous arbitration award. *See Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir.1991); *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440 (6th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985); *see also United Steelworkers of Am. v. Danly Mach. Corp.*, 852 F.2d 1024, 1027 (7th Cir.1988). If an award is unclear, it should be sent back to the arbitrator for

---

4. In *Moseley, Hallgarten*, 849 F.2d at 272, this court approvingly cited the following passage from the Second Circuit's decision in *Office of Supply, Gov't of Republic of Korea v. New York Nav. Co.*, 469 F.2d 377, 379 (2d Cir.1972) (footnotes and citations omitted) (emphasis added by *Moseley, Hallgarten* ).
Turning to the merits it is settled that upon judicial review of an arbitrator's award the court's function in ... vacating an arbitration award is severely limited, ... being confined to determining whether or not one of the grounds specified by 9 U.S.C. § 10 for vacation of an award exists. *An award will not be set aside because of an error on the part of the arbitrators in their interpretation of the law.*... Judicial review has been thus restricted in order to further the objective of arbitration, which is to enable parties to resolve disputes promptly and inexpensively, without resort to litigation and often without any requirement that the arbitrators state the rationale behind their decision.

5. In seeking to vacate the arbitration award, Flender argues that an arbitration award must be vacated where it exhibits manifest disregard of the law. This court's most recent rejection of this argument was in *Chameleon Dental Prods., Inc. v. Jackson*, 925 F.2d 223, 226 (7th Cir.1991): "[W]e have consistently held that the exclusive grounds for vacating or modifying a commercial arbitration award are found in §§ 10 and 11 of the Arbitration Act." *See also Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir.1988).

6. *See Roadmaster Corp. v. Production & Maintenance Employees' Local 504*, 851 F.2d 886, 889 (7th Cir.1988); *see also Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir.1987) ("A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the contract and implement their own notions of what is reasonable or fair.").

7. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

clarification. *Colonial Penn*, 943 F.2d at 334; *Danly*, 852 F.2d at 1027. However, remand for clarification is a disfavored procedure, *Colonial Penn*, 943 F.2d at 334; *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 188 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), and "[w]hen possible ... a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir.1989); *see also Island Creek*, 764 F.2d at 441. Thus, a court is permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record. *See B & M Transit*, 882 F.2d at 278; *Danly*, 852 F.2d at 1027; *see also Ethyl Corp.*, 768 F.2d at 188; *Island Creek*, 764 F.2d at 440–41.

Although the arbitrator did not quantify the amount payable to McGuire, the arbitrator definitively determined that Flender was required to pay McGuire commissions on sales that occurred during that part of the contract period which Flender prevented him from acting as its sales representative. Flender knew that McGuire was seeking commissions on all sales within his territory and that the arbitrator might order an accounting of the relevant sales figures.[8] Thus, Flender was aware of this issue and possessed information

necessary to its disposition, yet Flender did not present this information or request the arbitrator to deal with the issue.[9] In short, the arbitrator resolved all claims before him,[10] leaving to the district court only the ministerial computation of the amount owed to McGuire.[11] Because this computation was easily ascertainable from the documents that the arbitrator required Flender to produce,[12] the arbitrator's award was final and definite.

4.

Flender's final contention is that the arbitration award must be vacated because the arbitrator refused to hear evidence concerning mitigation of damages. Section 10(a)(3) (formerly section 10(c)) of the Arbitration Act provides that an award may be vacated where the arbitrator was "guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir.1985) (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)).[13]

---

**8.** In fact, the arbitrator stated: "[I]f I rule in favor of McGuire, Flender is going to have to make an accounting as to the sales in the territory and McGuire's entitlement will be computed on that basis in accordance with the contract formula." Tr. Vol. 7 at 162.

**9.** *Cf. Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 58 (3d Cir.1989) (where arbitrators not asked to quantify amount owing, arbitration award not ambiguous and remand inappropriate).

**10.** The arbitration award states that "[t]his award is in full settlement of all claims submitted to this arbitration." Appellant's App. at 3.

**11.** Because the term of the contract had not yet run, the entire amount due under the award could not have been computed by the arbitrator.

**12.** The arbitrator's award states that "Flender Corporation shall provide McGuire such documents as he may request to confirm the accuracy of the payments which come due.

McGuire's requests in this respect shall be reasonable and not unnecessarily burdensome to Flender Corporation." Appellant's App. at 2. *Cf. Automobile Mechanics Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991) (award that employees be made "whole for loss of earnings and benefits" not ambiguous); *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440–41 (6th Cir.) (arbitrator's order "to continue performance of the contract ... by accepting shipments of coal" clear and unambiguous in light of specific terms of contract and party's past performance), *cert. denied*, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985).

**13.** *See also Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979) ("'In handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing.'") (quoting *Bell Aerospace Co. v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974)).

In this case, the arbitrator excluded evidence of mitigation because he deemed it irrelevant to the ultimate issue: whether McGuire was entitled to commissions from Flender. In rejecting Flender's initial proffer of mitigation evidence, the arbitrator stated:

> You may be able to convince me later on that I am wrong, but my initial impression is that is that [sic] the issue in this case is whether or not [McGuire] is entitled to commissions. One of the principal issues in this case is whether he is entitled to commissions from Flender, and I think that his entitlement to commissions will be fixed by the agreement of the parties, and the question of mitigation is not really an issue insofar as Flender is concerned, I may be wrong about that and I am not foreclosing you from convincing me otherwise later on, but I am ruling now that it's not an issue in their case.

Tr. Vol. 6 at 145. We cannot say that the arbitrator's handling of mitigation evidence rendered the arbitration hearing unfair. Moreover, we note that the arbitrator explicitly stated that his ruling on this issue was tentative. Having failed to accept the arbitrator's invitation to raise the issue later in the proceeding, we cannot accept Flender's suggestion that the arbitrator's ruling requires us to vacate the arbitration award.

### Conclusion

For the reasons stated above, the decision of the district court is affirmed.

AFFIRMED