In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2723

Tri-State Business Machines, Inc.,

Plaintiff-Appellee,

v.

Lanier Worldwide, Inc.,

Defendant-Appellant.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98-C-0403-S--John C. Shabaz, Chief Judge.


Argued April 6, 2000--Decided July 26, 2000


        Before Posner, Chief Judge, and Flaum and Ripple,
Circuit Judges.

        Flaum, Circuit Judge.  On March 30, 1999, the
district court entered judgment in favor of
plaintiff Tri-State Business Machines, Inc.
("Tri-State") pursuant to a prior arbitration
award, and denied defendant Lanier Worldwide,
Inc.'s ("Lanier") counterclaim for breach of the
duty of good faith and fair dealing. Lanier now
appeals the district court's orders executing
that judgment, contending that the district court
erred in its enforcement of the arbitration
award.

I.  Background

        On June 9, 1998, Tri-State filed suit in the
Circuit Court for LaCrosse County, Wisconsin,
alleging that Lanier violated the Wisconsin Fair
Dealership Law ("WFDL"), Wisc. Stat. sec. 135 et
seq. (1999), when it terminated a Dealer
Agreement/1 between the two parties. The case
was removed to federal court pursuant to
diversity jurisdiction, and Lanier then moved to
stay the case pending the completion of
arbitration. The district court granted Lanier's
motion to compel arbitration and stayed all
arbitrable issues.

        After an arbitration hearing, a panel of three
arbitrators determined that the WFDL was

inapplicable to the Dealer Agreement between the parties. However, the panel also found that, according to the terms of the Agreement, Lanier's termination of its relationship with Tri-State triggered an obligation on its part to repurchase from Tri-State "any L[anier] inventory that T[ri-State] currently owns." In order to implement this conclusion, the arbitration panel required that "L[anier] . . . pay to T[ri-State] such amount as T[ri-State] paid to L[anier] as the purchase price for such inventory when T[ri-State] purchased such inventory originally . . . ." In addition, the arbitration panel ordered Lanier to pay Tri-State overdue service payments in the amount of $41,760.40. This award was confirmed in its entirety by the District Court for the Western District of Wisconsin and judgment was entered for Tri-State.

On May 28, 1999, Tri-State filed a motion for a writ of execution and an order to compel Lanier to perform its obligations under the confirmed award. The district court granted this motion and directed Lanier to pay $417,835.20 to Tri-State for existing inventory, but later stayed this order pending resolution of Lanier's motion for reconsideration. After reconsideration, the district court ordered Lanier to pay $346,265.20 to Tri-State. Included in that amount were $321,258.00 in inventory, $3,831.83 in Lanier sales literature, and $21,174.84 plus interest from the balance remaining on the money judgment. The district court held that the additional inventory balance of $92,774.83 should be addressed between the parties and then, if necessary, submitted to the district court.

Tri-State made a second motion for a writ of execution in the amount of $346,265.20 on June 21, 1999. The district court granted this motion and ordered that the second writ of execution issue immediately. The district court further required Lanier to place the remaining disputed amount in a trust account. Lanier now challenges the writs of execution issued against it, arguing that the district court erred in determining that certain items--specifically used equipment and sales literature--were within the meaning of "inventory" as used by the arbitration panel in its award.

II.  Analysis

The dispute in this case centers on the meaning of the word "inventory" as used by the arbitration panel in its award to Tri-State. The arbitration panel ordered Lanier to "repurchase from T[ri-State] any L[anier] inventory that T[ri-State] currently owns." According to Lanier, the district court erred in finding that this

repurchase requirement included both used equipment and sales literature possessed by Tri-State. Lanier argues that used equipment and literature are not within the definition of "inventory" as that term was used by the arbitration panel, and that those items should have been excluded by the district court in calculating the amount Lanier owed Tri-State pursuant to the arbitration award. We review the district court's conclusions of law de novo and its findings of fact for clear error. See Harter v. Iowa Grain Co., 211 F.3d 338, 347 (7th Cir. 2000).

Because Lanier's challenge to the district court's writs of execution focuses on the court's interpretation of a specific term in the arbitration award, we are mindful of several principles governing judicial consideration of such awards. "It is well-settled that the district court generally may not interpret an ambiguous arbitration award." Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 279 (7th Cir. 1992) (citations omitted); see also United Steelworkers v. Danly Mach. Corp., 852 F.2d 1024, 1027 (7th Cir. 1988). Rather, "[i]f an award is unclear, it should be sent back to the arbitrator for clarification." Flender, 953 F.2d at 279-80 (citations omitted). However, because "remand for clarification is a disfavored procedure," id. at 280 (citations omitted), "[w]hen possible . . . a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 278 (7th Cir. 1989) (citations omitted). "Thus, a court is permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record." Flender, 953 F.2d at 280 (citations omitted); see also Ethyl Corp. v. United Steelworkers, 768 F.2d 180, 188 (7th Cir. 1985), cert. denied, 475 U.S. 1010 (1986).

In support of its argument that "inventory" does not include used equipment and sales literature, Lanier cites the general contract principle that damages should put the aggrieved party in the same position it would have been in had the contract been performed. See Restatement (Second) of Contracts sec. 347 cmt. a (1979) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will . . . put him in as good a position as he would have been in had the contract been performed."). According to Lanier, proper expectation damages would entail the forced repurchase of Lanier inventory that Tri-State cannot now sell by virtue of the termination of the Dealer Agreement, but does not include used equipment

from which Tri-State has already gotten the benefit of its bargain. In other words, Lanier argues that because Tri-State has had the use of the equipment in question and has benefitted from that use, requiring Lanier to repurchase it at the original purchase price would be a windfall to Tri-State. See E. Allan Farnsworth, Contracts sec. 12.8, at 874-75 (2d ed. 1990) ("It is a fundamental tenet of the law of contract remedies that . . . an injured party should not be put in a better position than had the contract been performed.").

Lanier further argues that used equipment and sales literature are generally not included within the meaning of the term "inventory." According to Lanier, although the arbitration panel found that the WFDL did not apply to the parties' Dealer Agreement, the panel nonetheless relied on the concept of inventory in the WFDL in making its award. Under the WFDL, an individual who grants a dealership and then terminates that dealership is required to "repurchase all inventories sold by the grantor to the dealer for resale under the dealership agreement at the fair wholesale market value." Wisc. Stat. sec. 135.045 (1999). Lanier contends that this provision protects the dealer only in regard to goods sold directly to the dealer by the grantor, and that the act of leasing, selling, or renting those goods is an intervening step which removes the goods from the definition of "inventory" as contemplated by the WFDL. Lanier also asserts that "inventory," as it is generally understood and as it is defined in the WFDL, refers only to goods held for resale. See U.C.C. sec. 9-102(48)(B) (2000) ("'Inventory' means goods . . . which . . . are held by a person for sale or lease . . . ."); see also Wisc. Stat. sec. 135.045 (1999). Lanier argues that because the sales literature at issue was not held by Tri-State for resale, it, like the used equipment, should not have been included within the definition of "inventory" for purposes of the district court's enforcement of the arbitration award.

Tri-State responds that Lanier is not asking this Court to interpret the arbitration panel's use of the word "inventory," but rather to alter the substantive meaning of the award. According to Tri-State, Lanier is trying to change the award by inserting the word "new" before "inventory" in circumstances where there is no indication that the arbitration panel intended to limit its award in this way./2 Tri-State argues that the plain meaning of "inventory" encompasses everything it possesses that was originally purchased from Lanier, including both new and used equipment. In support of this argument, and

its contention that "inventory" includes sales literature as well, Tri-State cites the definition of "inventory" in U.C.C. sec. 9-102(48)(D), which provides that goods are "[i]nventory" if they are "materials used or consumed in a business." U.C.C. sec. 9-102(48)(D) (2000). Under this definition, both sales literature and used equipment, as items used in a business, would be included within the meaning of "inventory." Tri-State asserts that both the plain meaning of "inventory," and the definition of that term in the U.C.C., support the district court's reading of the arbitration award.

Although much of the parties' argument in this case focuses on the correct definition of "inventory," we do not believe that the arbitration award is as clear as either party asserts. The award requires that Lanier repurchase from Tri-State any Lanier "inventory" Tri-State currently owns, but it does not specify whether that repurchase obligation includes used equipment or sales literature. Furthermore, the definitions offered by the parties are themselves somewhat ambiguous, and there is no indication that the various statutes from which those definitions are taken were actually relied on by the arbitration panel in making its award. Lanier urges us to resolve this difficulty by applying general principles of contract law, but that argument is itself a concession that the arbitration panel's use of the term "inventory" requires interpretation. As we stated previously, district courts are not to interpret ambiguous arbitration awards, but rather should remand such awards for clarification. See Colonial Penn Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 334 (3d Cir. 1991) ("[C]ourts have uniformly stated that a remand to the arbitration panel is appropriate in cases where the award is ambiguous."). However, despite our conclusion that the arbitration panel's use of the word "inventory" is subject to multiple interpretations, and despite the district court's failure to remand for clarification of that award, we may nonetheless affirm the district court if the meaning of "inventory" is clear from the record. See Flender, 953 F.2d at 280 (citations omitted).

After examining the record of the arbitration hearing, we find it significant that Tri-State provided the arbitration panel with an inventory valuation dated May 29, 1998. That inventory valuation, submitted as Exhibit 128, lists the total value of Lanier inventory held by Tri-State at $321,258.54, an amount that includes the value of both new and used Lanier equipment held by Tri-State. At no time during the arbitration hearing did Lanier object to the inventory list referencing the used equipment, nor did it

challenge Tri-State's characterization of that equipment as inventory. Under these circumstances, the record supports a conclusion that "inventory," as the term was used by the arbitration panel, includes the items contained in Tri-State's inventory valuation, and that the district court properly determined that the arbitration award ordered the repurchase of the used equipment from Tri-State. We therefore conclude that the district court properly issued the writs of execution in regard to the $321,258.00 attributable to the repurchase of Lanier inventory owned by Tri-State.

Although the record supports the district court's finding as to the used equipment, it is not sufficient to sustain the court's conclusion that the word "inventory" in the arbitration award includes the Lanier sales literature possessed by Tri-State. The sales literature was not on the list of inventory submitted to the arbitration panel, and we can find no indication in the record that the panel considered the repurchase of the sales literature in making its award. While it is possible that a broad reading of "inventory" could encompass the sales literature, a narrower reading of that term would exclude the sales literature from the calculation of the amount owed by Lanier under the arbitration award. Because the term "inventory" in the arbitration award is ambiguous, and because that ambiguity is not resolved by the record in regard to the disputed sales literature, the district court could not have included the sales literature within the repurchase requirement of the arbitration award without engaging in impermissible interpretation of that award. We therefore conclude that the district court erred in not remanding the issue of the sales literature to the arbitration panel for clarification and in issuing the writs of execution in regard to the $3,813.83 attributable to the Lanier sales literature possessed by Tri-State.

III.  Conclusion

Having considered the district court's writs of execution in light of our conclusion that the arbitration panel's use of the word "inventory" is ambiguous, we AFFIRM the writs of execution issued by the district court insofar as they order the repurchase of used Lanier equipment possessed by Tri-State, but REVERSE and REMAND those orders in regard to the repurchase of the Lanier sales literature for further proceedings consistent with this opinion./3


/1 The Dealer Agreement between Lanier and Tri-State

was entered into by the parties on June 1, 1986, and expired by virtue of Lanier's notice of termination on May 31, 1998. Among other things, the Dealer Agreement, as amended, provided that "[a]ny controversy or claim arising out of or relating to this . . . Dealer Agreement or the breach . . . thereof shall be submitted to binding arbitration in Atlanta, Georgia in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ."

/2 Tri-State argues that because Lanier is now trying to alter the substantive meaning of the word "inventory" as it was used in the arbitration award and in the Award and Judgment enforcing that award, the proper remedy would have been to file a Rule 59(e) motion seeking to alter or amend the judgment issued by the district court. See Fed.R.Civ.P. 59(e) ("Motion to Alter or Amend Judgment."). According to Tri-State, because no such motion was filed within ten days of the entry of judgment, Lanier's arguments are now procedurally barred.

Although we recognize that a Rule 59(e) motion could be the proper means of attacking a judgment in circumstances where the moving party seeks to change or clarify the judgment entered, that is not the case here. Lanier does not argue that the judgment should be altered so that the used equipment and the sales literature would be excluded from the definition of "inventory" used by the arbitration panel, nor does it argue that the arbitration award is unclear and should be clarified. Rather, Lanier argues that the arbitration panel did not include used equipment and sales literature within the meaning of "inventory," and that the district court erred in interpreting the arbitration award to include those items. Under these circumstances, where Lanier does not seek to alter, amend, or clarify the arbitration award enforced by the district court, but rather argues that the award was erroneously interpreted, Lanier's failure to file a Rule 59(e) motion does not bar its claims and we may consider them on appeal.

/3 The only issues on appeal are the district court's findings regarding the used equipment and the literature. The remainder of the district court's writs of execution, including the $21,174.84 plus interest attributable to the balance remaining on the money judgment and the $92,744.83 that relates to additional inventory and that the district court ordered placed in trust, are unaffected by this decision.