In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2468

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO, CLC and LOCAL UNION
193-G,

*Plaintiffs-Appellants*,

*v.*

PPG INDUSTRIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of District of Illinois.
No. 09-2306 — **Harold A. Baker**, *Judge.*

ARGUED DECEMBER 6, 2013 — DECIDED MAY 9, 2014

Before KANNE and ROVNER, *Circuit Judges*, and DURKIN, *District Judge.**

ROVNER, *Circuit Judge.* Plaintiffs United Steelworkers and Local Union 193-G (collectively, "the Union") and defendant PPG Industries disagreed about whether PPG timely presented bargaining proposals under a collective bargaining agreement. The parties entered into arbitration, and the arbitrator ruled that some proposals were timely and others were not. The Union then filed suit to enforce the arbitrator's award. *See* 29 U.S.C. § 185(a). According to the Union, PPG violated the award by implementing certain economic proposals that the arbitrator had deemed untimely. The district court granted summary judgment to PPG, concluding that the arbitrator's award did not preclude PPG from implementing those proposals. The Union argues on appeal that the district court misconstrued the award. But neither the text of the arbitrator's decision nor the arbitration record supports the Union's desired interpretation of the award. To accept the Union's arguments, we would have to substantively alter the award in the Union's favor. Because we may not do so, we affirm.

## I.

PPG manufactures flat glass at a facility located in Mt. Zion, Illinois. The Union represents a bargaining unit comprising production and maintenance employees at the Mt. Zion plant. The relationship between PPG and the Union has long been governed by a collective bargaining agreement.

---

\* Of the United States District Court for the Northern District of Illinois, sitting by designation.

PPG informed the Union in April 2009 that it wanted to modify the agreement in an effort to reduce labor costs. Article XXXIV, Section 2 of the agreement specifies how the parties can propose modifications to the agreement. A party seeking to alter the agreement must provide 30 days' notice of its intent to seek changes. The parties are then required to meet in conference at least 10 days before the agreement expires. Any proposed changes "shall be presented not later than the first day of the conference" by the party seeking to modify the agreement.

After PPG informed the Union of its intent to modify the agreement, the parties' representatives attended an informal meeting on May 14, 2009. At the meeting PPG explained why it was seeking to alter the agreement and set forth, in general terms, its desired changes. According to PPG, its labor costs exceeded its competitors' by $10 an hour; to remain competitive it required a reduction in labor costs from $37 to $27 per hour. One possible method of achieving this reduction in costs, PPG explained, would be to implement a "two-tier" wage system, in which "first-tier" wages would be paid to existing employees and lower "second-tier" compensation would be paid to new hires and employees recalled from layoff. PPG intended to buy out some existing employees, thereby reducing the number of workers receiving first-tier compensation. PPG had recently implemented a similar system at its plant in Fresno, California.

The Union asked whether it would be possible to achieve the $10 per hour labor-cost reduction without requiring wage concessions from existing employees. PPG responded that it was indifferent about how to achieve the cost reductions, but

suggested that implementing only the "Fresno pattern"—the two-tiered system—would not be enough to meet the $10 target. Before the meeting adjourned, the Union requested that PPG provide the details of the Fresno arrangement. The Union also asked PPG to calculate the labor-cost reductions that could be achieved based on the Fresno two-tier model alone, without concessions from current employees.

On May 28, 2009, PPG sent an e-mail to the Union that detailed potential labor cost reductions and followed up on the May 14 conversation. The e-mail included a chart[1] calculating the estimated average labor costs, including benefits, under the two-tier system without any concessions from current employees. PPG calculated that, without concessions from current employees, the company's total labor costs per hour would be $30.21, still more than $3 per hour above PPG's $27 target. The e-mail explained: "We can save more money by more Tier 1 folks leaving and being replaced at [] Tier II rates for the higher skill jobs. That would certainly be the best scenario. However, [we] really think it will be difficult to get to the $27 without significant concessions from current employees."

---

[1]   The Union contends that the version of the chart it received was "garbled" and impossible to understand. We decline to consider this assertion, which the Union mentioned for the first time in its reply brief, *see Marcatante v. City of Chicago*, 657 F.3d 433, 438 (7th Cir. 2011), and which the Union did not present in its statement of material facts before the district court, *see Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010). In any event, the Union does not assert that it had any problems comprehending the body of the e-mail, which explained the chart's significance.

The parties' official negotiating conference began on June 1, 2009, which was the last day to present new proposals under the collective bargaining agreement. PPG delivered an opening statement in which it reiterated its desire to reduce labor costs to $27 per hour and implement a two-tiered wage structure. On that day, PPG did not present particular dollar amounts of wage or benefit cuts targeted at reaching the $27 per hour goal. Instead PPG introduced, and the parties discussed, several non-economic bargaining proposals such as changes to the drug-testing policy and overtime administration.

During the next two days of the conference, June 2 and 3, PPG put forward other proposals. Among those proposals was a two-tier wage system that set forth compensation cuts for employees on both tiers at specified dollar amounts. The Union responded that it was not required to bargain about proposals made on June 2 and 3, because Article XXXIV, Section 2 of the collective bargaining agreement barred new proposals from being made after the conference's first day. PPG disagreed. The Union filed a grievance, and the parties arbitrated the following questions: "Did [PPG] violate Article XXXIV, Section 2? If so, what should be the remedy?"

After taking evidence and considering the parties' written and oral submissions, the arbitrator issued an opinion ruling some proposals timely and others untimely. After recounting the history of the parties' dispute, the arbitrator concluded that by the beginning of the bargaining conference, the Union "knew or should have know[n] some of [PPG's] economic proposals—specifically [PPG's] labor cost goals as well as the two-tier wage structure." The arbitrator determined that PPG

"has preserved these proposals." The opinion closed with a three-sentence "Award":

> The Company's proposal regarding $10 reduction in costs is a viable contract proposal as is the two-tiered system. Also, the Company's non-economic proposals made on June 1, 2009 are proper for consideration. The Company proposals made on June 2 and 3, 2009 are discretionary items for bargaining.

After the arbitrator issued his opinion, PPG put forward its final offer, which included a two-tier wage system that cut existing employees' compensation. In the wake of the arbitrator's decision, PPG removed several items from its previous offer because the items had been proposed after June 1 and were not directly related to the $10 per hour reduction in labor costs or the two-tiered system. For example, PPG removed proposals that would have restricted certain severance benefits and altered the pension agreement. The Union responded that, despite the changes, the offer violated the arbitrator's award, and it threatened to go to court to "enforce" the award. The Union did not make any more proposals of its own. Ultimately PPG determined that the parties were at an impasse and unilaterally implemented the final offer.

The Union then filed this lawsuit in the Central District of Illinois under the Labor Management Relations Act, seeking to "[c]onfirm and enforce" the arbitration award by rescinding PPG's unilateral implementation of its final offer and awarding

back pay and other relief.[2] *See* 29 U.S.C. § 185(a) (authorizing suits "for violation of contracts between an employer and a labor organization"). Both parties moved for summary judgment, and the district court granted summary judgment to PPG. The court considered the arbitrator's opinion and the record before the arbitrator and determined that the Union was aware on or before June 1 that economic concessions from existing employees were on the table. Recognizing that the arbitrator had approved as timely PPG's proposals to cut labor costs by $10 per hour and implement a two-tier wage system, the court concluded that the arbitrator's award did not prohibit PPG from unilaterally implementing its final offer, including the economic concessions that the Union opposed. The Union moved for reconsideration and the court denied the motion.

## II.

The Union raises a myriad of arguments on appeal, all driving home the same basic point: the district court misconstrued the arbitration award. The Union argues that the arbitrator's decision was a resounding win for its side; it believes that the arbitrator rejected as untimely almost all of PPG's economic proposals and barred PPG from implementing these rejected proposals.[3] If the district court had properly

---

[2] Both parties also unsuccessfully pursued unfair labor practice charges before the National Labor Relations Board.

[3] Although the Union at times asserts that aspects of the arbitrator's opinion are ambiguous, its counsel acknowledged at oral argument that the Union is "going for broke"; it seeks a federal-court order barring PPG from implementing the challenged proposals rather than a remand to allow the

(continued...)

construed the arbitration award, the Union contends, it would have entered summary judgment in the Union's favor.

Despite labeling its suit as an action to "enforce" the award, the Union in substance asks the federal courts to alter it; to write in the margins of the arbitrator's decision and add language favorable to the Union. But the federal courts have an extremely limited role in reviewing an arbitrator's decision that interprets a collective bargaining agreement. A court will not overturn an arbitrator's award, even if the arbitrator's decision is wrong on the law or the facts; an arbitrator's award is unenforceable only if he "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks and brackets omitted); *see Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025–26 (7th Cir. 2013); *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 782–83 (7th Cir. 2007). A court will enforce the arbitrator's award as written and "may not interject itself into the arbitration process by elaborating on or rewriting an arbitrator's award." *United Steelworkers of Am. v. Danly Machine Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1988); *see Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003) ("[A] court is required to enforce an arbitration award *only* as written by the arbitrator."). If the arbitrator's decision as written is "too ambiguous to be enforced," a court may remand the case to the arbitrator for clarification. *Bhd. of*

---

[3] (...continued)
arbitrator to clarify his decision. *See Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir. 2007).

*Locomotive Eng'rs v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir. 2007). But such a remand is disfavored, and a court should, if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record. *See id.*; *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000); *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278–79 (7th Cir. 1989); *Danly Machine Corp.*, 852 F.2d at 1027. We review *de novo* the district court's grant of summary judgment. *Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 632–33 (7th Cir. 2003).

The Union argues that the district court should have recognized that the arbitrator barred PPG from implementing any proposals that adversely affect existing employees (those receiving first-tier compensation). The Union concedes that the arbitrator approved wage cuts for employees receiving second-tier compensation, but it argues that the arbitrator did not approve wage cuts for existing employees. Nothing in the text of the arbitrator's opinion indicates that he made such a distinction, so the Union relies instead on the arbitration record. The Union contends that by June 1 (the deadline for new proposals), PPG never suggested cuts to existing employees' wages. Therefore, according to the Union, the arbitrator could not possibly have approved these cuts as timely.

As the district court correctly concluded, however, the record before the arbitrator establishes that by June 1, PPG had raised the possibility of compensation cuts for existing employees. At the May 14 meeting, PPG explained that implementing the "Fresno pattern"—the two-tiered system—would not be sufficient on its own to achieve the desired reduction in labor

costs. In a May 28 follow-up e-mail, PPG calculated the estimated savings from implementing the two-tiered system without concessions from existing employees and determined that it fell more than $3 per hour short of PPG's cost-cutting goals. The e-mail concluded: "[We] really think it will be difficult to get to the $27 without significant concessions from current employees." PPG raised the possibility of compensation cuts for existing employees by June 1, and this court may not "interject itself into the arbitration process" by reading into the arbitrator's opinion a conclusion that proposed wage cuts for existing employees were untimely. *See Danly Machine Corp.*, 852 F.2d at 1027.

In a similar vein, the Union argues that the district court should have recognized that the arbitrator barred PPG from cutting employees' benefits (as opposed to wages). Although the arbitrator's opinion does not distinguish between wages and benefits, the Union insists that a distinction can be gleaned from the arbitrator's reference to a two-tier *wage* structure. Relying on the arbitrator's use of the word "wage" in describing the two-tier proposal, the Union argues "it is clear that . . . the arbitrator did not mean to approve *benefit* reductions for employees in either the lower tier or the higher tier."

But it does not follow from the arbitrator's use of the word "wage" that he meant to distinguish between wages and benefits, let alone to rule untimely any proposals cutting benefits. Nor is the Union's position supported by the arbitration record. In fact, PPG's May 28 e-mail, which itemized the estimated labor costs for different categories of employees under a possible two-tier system, included a row entitled "benefits"; according to that chart, the amount of hourly

benefits for second-tier employees was "$0.00," a significant reduction from the "$9.99" for other categories of employees. In arguing that the district court should have recognized a distinction between wages and benefits, the Union again seeks relief that the arbitrator did not grant.

Finally, the Union contends that, by allowing PPG to decrease the wages and benefits of existing employees, the district court erroneously rendered the arbitrator's award "meaningless." We reject this argument, because the Union is wrong when it asserts that the court "interpreted the award as imposing no obligation whatsoever on PPG." It is true, as the Union points out, that the arbitrator ruled some proposals untimely and declared that proposals first introduced on June 2 and 3 were "discretionary items for bargaining." But the Union overlooks changes that PPG *did* make to its offer in the wake of the arbitrator's decision. PPG removed several proposals that were introduced after June 1 and did not relate to hourly labor cost reductions or the implementation of a two-tier employment system. For example, PPG's final offer excised proposals that limited severance benefits and altered the pension agreement. At oral argument, the Union's attorney acknowledged these changes but dismissed them as insignificant compared to the wage concessions. But PPG's changes made in response to the arbitrator's award undermine the Union's argument that the award, as interpreted by both PPG and the district court, imposed "no obligation whatsoever on PPG." The award may not have been as favorable to the Union as it wanted, but it was not "meaningless."

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.