In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 21-1809 & 21-1822

NANO GAS TECHNOLOGIES, INCORPORATED,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

CLIFTON ROE,

*Defendant-Appellant, Cross-Appellee.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-02241 — **Sharon Johnson Coleman**, *Judge.*

_____

ARGUED DECEMBER 7, 2021 — DECIDED APRIL 25, 2022

_____

Before ROVNER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. These cross-appeals are the latest battleground in a long-standing dispute between an inventor and the company that owns his invention. Clifton Roe assigned his invention to Nano Gas Technologies, Incorporated ("Nano Gas") in return for equity, a board seat, and a potential salary. After the business relationship soured, Roe picked up his invention and left. Pursuant to the assignment

agreement, arbitration followed. The arbitrator recognized that, while Roe harmed Nano Gas, Nano Gas benefited from Roe's invention. The arbitrator fashioned a unique remedy, awarding damages to both parties that, once offset, required Roe to compensate Nano Gas for a lesser amount. All agree that the arbitrator's award is not a picture of clarity. The district court attempted to interpret the award. Both parties appeal and ask us to take a second look.

## I. Background

Roe invented a nozzle that transforms gases into liquids. Roe assigned the nozzle to Nano Gas, hoping to commercialize this technology. The terms of the assignment agreement granted Roe 20% equity in Nano Gas and a board seat. It also tied Roe's salary to Nano Gas successfully raising capital or Roe successfully developing the technology into a working machine, whichever came first. Nano Gas and Roe failed to satisfy either condition before frustrations boiled over. Roe left Nano Gas, taking with him a prototype machine and a box of Nano Gas's intellectual property produced by Jeff Hardin, another employee. Roe continued to develop the technology on his own. After an unsuccessful scuffle before a federal court in the Eastern District of Michigan, the parties entered arbitration.

The arbitrator generally found for Nano Gas, determining that Roe should compensate Nano Gas for the financial harms Roe caused when he continued to use the technology and made off with the Hardin work papers. Concurrently, the arbitrator balanced the equities and found that Roe deserved some compensation for his work. The arbitrator explained that it considered other ways of compensating Roe but

determined that an offset of two financial awards was appropriate. The award stated the following:

> Roe will have contributed a great deal to whatever success the Nano Gas machine ultimately achieves. The Arbitrator has decided that equity requires that some form of award be made to Roe for all that he has contributed. That award, however, should be in the form of an offset against the Arbitrator's award to Nano Gas.

> The Arbitrator considered awarding Roe some sort of royalty on future profits that might flow from the Nano Gas machine or other related intellectual property, but decided against this. It should be noted in this regard that Roe remains a major shareholder in Nano Gas, and that, as such, he could benefit financially from this in the future should Nano Gas experience profitability and an increase in value.

The arbitrator then made the following money awards, addressing both the Hardin work papers and the offset:

> Roe is ordered to conduct a further search for the box of Hardin work-papers and to return same to Nano Gas or, in the event that Roe is unable to do that, to pay to Nano Gas the sum of $150,000.

> Roe is ordered to pay damages to Nano Gas in the amount of $1,500,000, with such payment to be made by (1) first, subtracting from the amount to be paid to Roe by Nano Gas under this decision ($1,500,000) the amount to be paid to Nano Gas by Roe under this decision ($1,000,000) and (2) thereafter, the remainder ($500,000) in such manner as Roe chooses.

> Nano Gas is ordered to pay Roe the amount of $1,000,000, to be paid by Nano Gas by subtracting this amount from the amount Roe is ordered to pay Nano Gas.

In effect, Nano Gas satisfied its obligation to Roe without further action. Roe received $1,000,000 back instantly on the money he owed Nano Gas. But Roe's obligation to Nano Gas, a significant sum of $500,000 (or $650,000 if Roe did not return the Hardin work papers), remained outstanding.

Nano Gas filed a complaint in the Northern District of Illinois to enforce the award and enter judgment for $650,000. The district court did both. Then, Nano Gas filed a turnover motion seeking Roe's Nano Gas stock, valued at approximately $117,000. *See* Fed. R. Civ. P. 69 (instructing courts to apply state law in post-judgment proceedings); 735 ILCS 5/2-1402 (providing Illinois procedure for enforcing a judgment). Roe resisted. He argued that the award explicitly stated he could pay the remaining amount "in such manner as Roe chooses," and provided he remain a Nano Gas shareholder. Nano Gas filed a supplemental turnover motion, wherein it argued that Roe had no intention of paying the award. At a hearing on the motion, Nano Gas informed the district court that Roe first voiced his interpretation of the award during a deposition related to Nano Gas's citation to discover assets. In his deposition, Roe stated he intended to pay off the award with dividends from the stock and claimed the award gave him the power to wait until he died and satisfy the debt through his estate. Roe's interpretation seems to have blindsided Nano Gas.

The district court denied Nano Gas's turnover motion. It found that Roe had the power to pay both the $500,000 award

and the $150,000 award for the Hardin work papers, "in such manner as Roe chooses." It also reasoned that the award stated Roe would continue to benefit as a shareholder.

Nano Gas filed a motion to reconsider. *See* Fed. R. Civ. P. 59(e). It argued that Roe's power to choose did not apply to the $150,000 award for the Hardin work papers. The district court granted the motion and amended its order. It maintained its interpretation that Roe could choose how to pay the $500,000 award, but ordered Roe to turn over the Nano Gas stock or identify other assets to satisfy the $150,000 award. Roe then filed his own motion to reconsider. He argued that the district court's amendment conflicted with its prior ruling that Roe remain a shareholder. The district court denied the motion. It determined that Roe's award was the offset, not indefinite shareholder status.

## II. Discussion

Roe appeals the district court's denial of his motion to reconsider. Nano Gas cross-appeals the district court's findings regarding Roe's discretion to satisfy the $500,000 award. Reviewing the district court's turnover orders resolves both appeals.

A turnover order is a final judgment. We review de novo the district court's ruling on Nano Gas's motion. *Maher v. Harris Tr. & Sav. Bank*, 506 F.3d 560, 561–62 (7th Cir. 2007) (citing *Soc'y of Lloyd's v. Est. of McMurray*, 274 F.3d 1133, 1134 (7th Cir. 2001)); *see also United States v. Sayyed*, 862 F.3d 615, 617 (7th Cir. 2017). Simultaneously, "[j]udicial review of arbitration awards is tightly limited." *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (quoting *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704,

706 (7th Cir. 1994)). The Federal Arbitration Act ("FAA"), and the Supreme Court, indicate that "arbitration awards are largely immune from … scrutiny in court." *Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021); *see* 9 U.S.C. §§ 9–11.

Though neither party seeks to modify the award under FAA § 11, the wrong interpretation may inadvertently alter the award. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PPG Indus., Inc.*, 751 F.3d 580, 584 (7th Cir. 2014) (noting that a party effectively asked the Court "to write in the margins of the arbitrator's decision and add [favorable] language"). We may not alter the arbitrator's award. Instead, we must enforce the award as written and "if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record." *Id.* at 585 (citations omitted); *see Tri-State Bus. Machs., Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000).

First, we consider Roe's contention that the award entitles him to remain a shareholder. We agree with the district court that the award is devoid of any language indicating Roe shall remain a shareholder indefinitely. The award can only be read as informing the parties that the arbitrator considered awarding Roe a right to future profits but declined to do so. The reference to Roe's shareholder status at most serves as an equitable consideration for why the arbitrator determined the offset was the appropriate award. It is merely explanatory, separate from the arbitrator's ultimate ruling. The award only grants Roe the $1,000,000 offset—his Nano Gas shares are fair game.

Second, we consider Roe's claim that the award prevents Nano Gas, or the courts, from determining how Roe pays his

$500,000 obligation to Nano Gas. Though Roe invites ambiguity through an alternative reading of "in such manner as Roe chooses," his reading is unreasonable. The award lacks any indication that the arbitrator granted Roe complete discretion to decide if, when, and how Roe pays the award during his lifetime. The "manner" Roe chooses does not mean the "time" Roe chooses. Rather, we can only conclude that the arbitrator intended for Roe to satisfy his obligations to Nano Gas in the usual post-arbitration proceedings. If Roe had multiple assets which could satisfy the judgment, he could choose which assets to deliver. If Roe failed to pay Nano Gas on his own accord, Nano Gas could turn to the courts to recover what Roe owed. But Roe cannot refuse to turn over his only identifiable asset, choose hypothetical forms of payment that may never come to fruition, or require Nano Gas to wait until he dies. Both the language of the arbitrator's opinion and common sense easily resolve this issue.

Courts may remand to the arbitrator to clarify an award. *See United Steel*, 751 F.3d at 585 (citing *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir. 2007)). Yet it is unnecessary and impractical to do so here. The arbitrator entered its award over five years ago and, at oral argument, Roe's counsel could not confirm the arbitrator's whereabouts. When an award's language compels only one conclusion, the parties need not track down the arbitrator to confirm the obvious. Resolving this matter today allows Nano Gas to return to the district court and resume enforcing the

judgment without needless delay. Nano Gas has waited long
enough.[*]

### III. Conclusion

For the foregoing reasons, we reverse the district court's
findings regarding Roe's discretion to satisfy the $500,000
award and affirm the district court's amended judgment as to
the $150,000 award for the Hardin work papers. We remand
for further proceedings consistent with this opinion.

---

[*] At oral argument, Roe's counsel indicated that Roe has moved on to
another company with a new, better invention. Given Roe's apparent re-
cent business success, he may have new assets to satisfy the award without
forfeiting his stock. We leave these issues in the capable hands of the dis-
trict court.